**Jes BEARD**

v.

**BOARD OF PROFESSIONAL RESPONSIBILITY.**

Supreme Court of Tennessee, at Knoxville.

May 6, 2009 Session.

July 9, 2009.

Lisa Bowman (on appeal) and Jes Beard (pro se before hearing panel, trial court), Chattanooga, Tennessee, for the appellant, Jes Beard.

Randall J. Spivey, Nashville, Tennessee, for the appellee, Board of Professional Responsibility.

1. Before the hearing panel, the three petitions for discipline were referred to variously as Petition, Supplemental Petition, and Second

## OPINION

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., and GARY R. WADE and WILLIAM C. KOCH, JR., JJ., joined. SHARON G. LEE, J., not participating.

In this direct appeal of a lawyer disciplinary proceeding involving three separate complaints, we are asked to determine whether the trial court correctly affirmed the hearing panel's order suspending attorney Jes Beard from the practice of law for two years. Mr. Beard argues that the hearing panel erred in: (1) denying his motion to sever and continue the scheduled hearing; (2) finding that he violated several disciplinary rules; (3) applying the Rules of Professional Conduct, when those rules took prospective effect after his conduct occurred; (4) denying him the opportunity to present mitigating evidence; and (5) imposing punishment that was not comparable with punishments imposed in similar cases. Mr. Beard also asserts that the trial court erred in granting the Board of Professional Responsibility's motion to quash his subpoena duces tecum and abused its discretion in denying his motion for recusal. We affirm the judgment of the trial court.

### Factual and Procedural History

Jes Beard has been licensed to practice law in Tennessee since 1990 and, at the time of the matters described herein, was engaged in a solo practice in Chattanooga, Tennessee. The present appeal involves three separate petitions[1] for discipline filed by the Board of Professional Responsibility ("the Board") against Mr. Beard. The petitions were consolidated for hearing before a hearing panel ("Panel"), appointed pursuant to Tennessee Supreme Court Rule 9, section 8.2.

Supplemental Petition. For ease of reference

*Original [McGehee] Petition
for Discipline* [2]

In October 2001, Mr. Beard filed a divorce complaint on behalf of his client, Mark McGehee, against Julie McGehee Lopez.[3] The trial on this matter was held on September 16, 2002. At the conclusion of the trial, the trial court announced its findings from the bench. Because Mrs. Lopez was acting pro se, the trial court asked Mr. Beard to draft a proposed final order and permanent parenting plan (collectively, "proposed final order") for the court to consider.[4] Mrs. Lopez testified that she contacted Mr. Beard's office several times in September and October to check on the status of the proposed final order and was told by Mr. Beard and his secretary that they would get to it when they had the time. Mr Beard testified[5] that he could not recall whether Mrs. Lopez called his office during this time.

On October 30, 2002, the trial court wrote a letter to Mr. Beard and Mrs. Lopez informing them that if the court did not receive a proposed final order by November 15, 2002, the case would be dismissed. On November 12, Mrs. Lopez drafted a letter to the court explaining her frustrations with Mr. Beard for failing to file a proposed final order and noting that she had contacted Mr. Beard and his secretary several times regarding her divorce case but no order had been filed. Along with the letter, Mrs. Lopez sent the court a proposed marital dissolution agreement, which was filed on November 13.

Mr. Beard testified that he did not receive the trial court's letter until November 12, 2002. He also testified that the trial court's bench clerk notified his office on November 13 that if an order was not received in two days, the case would be dismissed. Mr. Beard testified that he was out of town on November 13; it is unclear from the record whether he was out of town on November 12. After reviewing the trial court's letter, Mr. Beard testified that he spent the afternoon of November 14 hurriedly drafting a proposed final order. Mr. Beard testified that the proposed final order was drafted from memory because he had lost his September 16 trial notes. Although it is unclear from the record when Mr. Beard realized he had lost his notes, he did testify that his lost notes were the reason for the delay in drafting the proposed final order. Mr. Beard further testified that he did not request a copy of the transcript from the September 16 hearing because he did not want to burden Mr. McGehee with an additional expense.

Mr. Beard further testified that after drafting the proposed final order he made changes based upon Mr. McGehee's assertions that he and Mrs. Lopez had reached agreements later on issues that were unresolved from the September 16 trial.[6] Af-

in this opinion, we will refer to them by the names of the complainants.

2. The facts in this petition are taken from the Board's petition for discipline and exhibits, Mr. Beard's Answer, and the testimony and exhibits proffered during the Panel hearing.

3. Sometime after this divorce proceeding, but prior to the hearing on this petition for discipline, Ms. McGehee remarried. Her married name is Julie McGehee Lopez. For ease of reference in this opinion, we will refer to her at all times as Mrs. Lopez.

4. The trial court did not provide a specific date on which to file the proposed final order.

5. Mr. Beard represented himself before the Panel. Therefore, Mr. Beard asserted legal arguments, testified on his own behalf, and was cross-examined.

6. Mr. Beard never confirmed with Mrs. Lopez, prior to filing his proposed final order, that such mutual agreements had occurred between the parties. Mrs. Lopez denied that such agreements had been reached between her and Mr. McGehee.

ter making these changes, Mr. Beard testified that he called Mrs. Lopez at home, around 6:30 p.m. on November 14, to discuss the two documents. Mr. Beard testified that this was the first time he had attempted to contact Mrs. Lopez since the September 16 trial. Mr. Beard recalled talking to Mrs. Lopez on the phone that evening but testified that the conversation was short. Mr. Beard explained that when he attempted to discuss the proposed final order, Mrs. Lopez responded that she had already filed her own proposed final order and did not wish to discuss anything further about the matter with him and hung up.

Mrs. Lopez, however, testified that she never spoke with Mr. Beard on November 14. Instead, she testified that Mr. Beard left a message around 8:00 p.m. requesting that she call him back to discuss the proposed final order. Mrs. Lopez testified that she did not return Mr. Beard's call. She explained that she had filed a proposed final order, and therefore, there was nothing more to discuss.

The next day, November 15, Mr. Beard filed his proposed final order with the trial court. Before filing the document, he never requested a copy of the trial court transcript from the September 16 trial, never attempted to contacted Mrs. Lopez to discuss the matter before the evening of November 14, and never filed a request for extension of time to file the order with the trial court.

Sometime after filing the order, Mr. Beard contacted Mrs. Lopez to discuss the upcoming Thanksgiving[7] holiday child visitation schedule. Mrs. Lopez testified that, during this conversation: "I told [Mr. Beard] that he was a liar and that he had falsified information in that decree that

had given, I guess, more allowances for [Mr. McGehee], and [then] I hung the phone up." Mr. Beard had no more direct contact with Mrs. Lopez after this phone conversation. Following this conversation, Mr. Beard took no action to determine, and/or rectify, any errors contained in the proposed final order he filed.

On December 2, 2002, the trial court adopted and signed Mr. Beard's proposed final order. It is undisputed that the final order prepared and submitted by Mr. Beard and entered by the trial court is inconsistent, in several material aspects, with the trial court's findings from the bench rendered at the conclusion of the September 16 trial. Sometime thereafter, Mrs. Lopez obtained an attorney to assist her in remedying these errors.

On January 20, 2003, Mrs. Lopez, through her attorney, filed a Motion to Alter or Amend the trial court's December 2, 2002, divorce decree. In the motion, Mrs. Lopez set out six inaccuracies in Mr. Beard's proposed final order and permanent parenting plan. All six inaccuracies were more favorable to Mr. McGehee. That same day, Mrs. Lopez also filed a Motion for Sanctions against Mr. Beard, requesting an award of sanctions and attorney fees equaling $2,383.80.

On February 10,[8] the trial court held a hearing on Mrs. Lopez's Motion to Alter or Amend. Mr. Beard did not file any additional pleadings prior to the February 10 hearing. On March 12, the trial court entered an Amended Final Decree granting Mrs. Lopez's Motion to Amend in its entirety. On April 9, Mr. Beard filed a Motion to Alter or Amend the Amended Final Decree, specifically requesting that the amount of child support be changed.

---

7. In 2002, Thanksgiving Day was on November 28.

8. The Panel incorrectly noted the date as February 24, 2003. Mrs. Lopez's Motion for Sanctions was heard on that day.

Significantly, the amount of Mr. McGehee's child support obligation was one of the material inaccuracies in Mr. Beard's original proposed final order. The trial court denied this motion. On May 12, the trial court granted Mrs. Lopez's Motion for Sanctions.

Mr. Beard subsequently filed a notice of appeal, disputing the trial court's findings "regarding child support [and] its award of primary residential parenting responsibility to [Mrs. Lopez], the propriety of the Court's decision to amend its final decree of divorce pursuant to [Mrs. Lopez's] Tenn. R. Civ. P. 60 motion[,] and the granting of Tenn. R. Civ. P. 11 sanctions." *McGehee v. McGehee*, No. E2003–01555–COA–R3–CV, 2004 WL 1801749, at *1 (Tenn.Ct.App. Aug.12, 2004). The Court of Appeals affirmed the trial court's findings concerning the amount of child support owed and primary parenting responsibilities, as well as the trial court's decision to grant Mrs. Lopez's Rule 60 motion to amend. The Court of Appeals, however, reversed the award of sanctions, noting that although the Court of Appeals did not condone the actions of Mr. Beard, sanctions were inappropriate because "the record fails to show that [Mrs. Lopez] complied with the safe harbor requirement of [Tenn. R. Civ. P.] 11.03(1)(a), and the Trial Court did not comply with [Tenn. R. Civ. P.] 11.03(3)." *McGehee*, 2004 WL 1801749, at *5.

On November 4, 2003, in response to a complaint filed by Mrs. Lopez, the Board filed a Petition for Discipline ("McGehee Petition") against Mr. Beard alleging numerous disciplinary rules violations. On November 26, 2003, Mr. Beard timely filed his response, admitting all the factual allegations alleged in the petition but denying that his conduct violated any disciplinary rules. Specifically, Mr. Beard explained, "my draft was simply the result of a flawed memory on my part, and my draft included fewer errors than did Mrs. [Lopez's] draft."

The Board filed a First Set of Interrogatories and Request for Production of Documents on December 11, 2003. Mr. Beard did not respond. More than six months later, on June 16, 2004, the Board filed a Motion to Compel Responses to the First Set of Interrogatories and Request for Production of Documents.[9] Mr. Beard did not respond. On September 7, 2004, the Panel granted the Board's Motion to Compel and ordered that Mr. Beard respond completely and fully to the discovery requests by September 28, 2004. It is unclear from the record whether Mr. Beard ever complied with the Panel's order. However, no motion for default was filed in this matter.

### *Supplemental [Murray] Petition for Discipline* [10]

In September 2003, Mr. Beard represented Raymond Clayton Murray, Jr., in a child support dispute with Mr. Murray's ex-wife, Tina Louise Payne Murray. A hearing in this matter was conducted on September 8, 2003. The trial court took the matter under advisement. Following the hearing, Mr. Beard advised Mr. Murray that he would probably have to pay Ms. Murray between $12,000.00 and $16,000.00 in back child support. Based on Mr. Beard's advice, Mr. Murray authorized Mr. Beard to make a quick settlement offer of $8,000.00 to Ms. Murray.

On October 13, 2003, the trial court rendered its written opinion. Mr. Beard re-

---

9. On June 16, the Board also filed a Request for Hearing Panel. The Panel was appointed by notice filed August 23, 2004.

10. Because a default judgment was entered in this petition, the recited facts are taken solely from the Board's petition for discipline.

ceived a copy the following day. Mr. Beard contacted Mr. Murray to inform him that it appeared that the trial court had found that Mr. Murray owed Ms. Murray $15,000.00 in back child support. Mr. Beard admitted to Mr. Murray when they spoke that he had not read the opinion thoroughly. Mr. Beard informed Mr. Murray that he would contact him after he read the entire opinion. On the morning of the 15th, still not having read the opinion, Mr. Beard informed Mr. Murray that Ms. Murray had made a counteroffer of $10,000.00. Mr. Beard recommended that Mr. Murray accept the settlement offer and deliver the settlement amount to opposing counsel, Mr. Bill Horton, before Mr. Horton had time to read the trial court's opinion. Mr. Murray agreed and promptly delivered a check to Mr. Horton. After paying the money, the parties signed an Agreed Order that day, settling the child support dispute for $10,000.00.

That same afternoon, approximately five hours later, Mr. Beard, having finally read the trial court's order, called Mr. Murray again and informed him that he should stop payment on the check because the trial court, although holding that Mr. Murray owed Ms. Murray $10,500.00 in back child support minus credits totaling $2,595.00, also found that Ms. Murray was obligated to Mr. Murray for $14,552.38 of necessities that Mr. Murray had provided to the child. Thus, the net result of the trial court's order was that Ms. Murray

owed Mr. Murray $6,697.38 plus interest, an outcome much more favorable to Mr. Murray than that reflected in the Agreed Order.

On October 16, the Agreed Settlement Order, signed by Mr. and Ms. Murray the previous day, was filed. On November 17, 2003, Mr. Beard filed a "Motion for Relief or Guidance," asking the trial court to determine which of two orders, the Agreed Order between the parties or the trial court's order, should control. In this motion, Mr. Beard asserted that "prior to the parties reaching or signing the [Agreed Order, the trial court] entered [its] Memorandum Opinion." [11] On December 16, 2003, the trial court found that the Agreed Order was binding on the parties, finding that "the parties reached an agreement, signed an Agreed Order, and passed the money before this court's Memorandum Opinion was received." [12]

On September 17, 2004, Mr. Murray filed a complaint for professional negligence against Mr. Beard in the Circuit Court of Hamilton County, asserting that Mr. Beard's review of the trial court's order prior to advising Mr. Murray to settle fell below the applicable standard of care of a trial lawyer. Mr. Murray requested $16,697.38 in damages. [13] On or about November 29, 2005, Mr. Murray filed a Motion to Compel Discovery, requesting that Mr. Beard respond to expert interrogatories. When Mr. Beard failed to

11. Although not specifically plead in the petition for discipline, Mr. Beard's "Motion for Relief or Guidance" was attached as an exhibit to the petition and incorporated by reference.

12. This finding was based, in part, on the affidavit of Mr. Horton, in which he stated that the parties had not received the trial court's Memorandum Opinion prior to the parties signing and filing the Agreed Order. It is unrefuted that Mr. Horton had not received the trial court's Memorandum Order at

the time his client signed the Agreed Order. Notwithstanding this finding by the trial court, however, Mr. Beard has subsequently admitted that *he* received the trial court's Memorandum Opinion prior to Mr. Murray "passing the money" and signing the Agreed Order.

13. This amount derives from the sum of $10,000.00 that Mr. Murray paid to Ms. Murray and $6,697.38 that the trial court determined Ms. Murray owed Mr. Murray.

respond to the expert interrogatories, Mr. Murray subsequently filed a Motion to Exclude Evidence. On May 26, 2006, Mr. Beard filed a Motion for Summary Judgment. This motion was dismissed as being untimely filed. On June 22, Mr. Murray filed an Amended Motion to Compel and/or Exclude Evidence and Entry of Judgment of Liability.[14]

The trial court orally granted Mr. Murray's June 22 motion and ordered that the malpractice trial would be limited to the issue of damages only. The case was heard on June 28. On June 30, 2006, the trial court entered an order nunc pro tunc to November 30, 2005, finding that Mr. Beard was unwilling or unable to comply with discovery, dismissing all liability defenses, and holding that the case would proceed only on the issue of damages. On July 10, the trial court entered a judgment against Mr. Beard in the amount of $16,697.38. Mr. Beard appealed this decision to the Court of Appeals. His appeal was still pending at the time of the Panel's hearing.

On August 4, 2006, in response to a complaint filed by Mr. Murray, the Board filed a Supplemental Petition for Discipline ("Murray Petition") against Mr. Beard, alleging numerous disciplinary rules violations. This petition was assigned to the same hearing panel appointed to hear the McGehee Petition. Accompanying the Murray Petition was a Second Set of Interrogatories and Request for Production of Documents. On September 1, 2006, in response to Mr. Beard's failure to respond to the Murray Petition, the Board filed a Motion for Default Judgment and requested that all of the allegations in the Murray Petition be deemed admitted. On September 21, 2006, Mr. Beard untimely filed an Answer. On October 10, the Board filed a Motion to Compel responses to the Second Set of Interrogatories and Request for Production of Documents filed with the Murray Petition. On December 1, 2006, the Panel filed an order granting the Board's Motion to Compel and required Mr. Beard to respond fully and completely to the Second Set of Interrogatories and Request for Production of Documents by December 15, 2006. Mr. Beard never responded. As a result, the Board, on December 21, 2006, filed a Motion to Strike [Mr. Beard's] Answer to [the Murray Petition] and Enter Judgment by Default. On February 6, 2007, the Panel filed an Order granting the Board's motion to strike and for default judgment.

### Second Supplemental [Morehead] Petition for Discipline [15]

In May 2004, Mr. Beard represented Mother in a Juvenile Court proceeding regarding a dependency and neglect petition. On May 19, an adjudicatory hearing was conducted before the Juvenile Court Referee Cindy McAfee. Mr. Beard, Mother, and Father were present at the hearing. Father was not represented by counsel during the hearing. At the conclusion of the hearing, Referee McAfee determined that the children were dependent and neglected and awarded custody to the State. At that time, Referee McAfee informed the parties that they had five days to request a hearing before the presiding judge and ten days thereafter to request an appeal to the Circuit Court.

On June 1, 2004, Referee McAfee entered an Adjudicatory Order ("Order") explaining her findings. That afternoon, the Order was reviewed in a hearing before the Juvenile Court. Present at this hearing were Mr. Beard, Mother, Father, Ref-

---

14. A copy of this motion is not contained in the record on appeal.

15. Because a default judgment was entered in this petition, the recited facts are taken solely from the Board's petition for discipline.

eree McAfee, Sean P. Morehead, State's Attorney for the Department of Children Services in Hamilton County, and Robert D. Bradshaw, guardian ad litem to the children. An audio recording of the hearing clearly reveals that Mr. Beard acknowledged that he had been provided with a copy of the Order. The audio recording also reflects that Mr. Beard raised several questions to Referee McAfee about her findings and recommendations. No request for appeal having been filed by either party, on June 11, the Juvenile Court confirmed the Order.

On or about April 22, 2005, Father, by and through counsel, filed a "Father's Bill of Exceptions and Motion to Allow His Appeal." In the motion, Father and his counsel asserted that they had not received a copy of the Order until April 11, 2005. Because of this failure to timely serve Father, he asserted that he was denied the right to appeal timely.

At a hearing on Father's motion, Mr. Beard orally joined the motion on behalf of Mother. On April 25, Mr. Beard filed a Brief in Support of Rehearing on behalf of Mother, asserting that although he became aware of the Order in either late July or early August 2004, neither he nor Mother were served with a copy of the Order until April 11, 2005. Mr. Beard did assert, however, that he had seen a copy of the Order in the court file sometime in August or September 2004. Mr. Beard also asserted that he represented in good faith, during the June 1, 2004 hearing, that Mother had received a copy of the Order even though she actually had not received a copy.[16] Finally, on April 27, 2005, Mr. Beard filed an Affidavit of Non–Receipt on behalf of Mother, wherein Mother asserted under

oath that she did not receive a copy of the Order until April 11, 2005.

Hearings on "Father's Bill of Exceptions and Motion to Allow His Appeal" and on Mr. Beard's oral motion for a rehearing and Brief in Support of Rehearing were held on April 27, May 11, and June 5. In an order entered June 15, 2005, the trial court determined that the motions were untimely and without merit.[17] The trial court specifically found that Mr. Beard was present when the parties were informed of their rights for a rehearing and time to appeal. The trial court noted that the audio recording of the June 1, 2004 hearing revealed that Mr. Beard acknowledged that he had been provided a copy of the Order.

On September 12, 2006, in response to a complaint filed by Mr. Morehead and Mr. Bradshaw, the Board filed a Petition for Discipline ("Morehead Petition") against Mr. Beard alleging numerous disciplinary rules violations. Accompanying the Petition was a Third Set of Interrogatories and Request for Production of Documents. This petition for discipline was also assigned to the original hearing panel for disposition.

Mr. Beard did not respond to the Morehead Petition or discovery requests. Therefore, on October 10, 2006, the Board filed a Motion for Default Judgment and requested that all of the allegations in the Morehead Petition be deemed admitted. On October 25, Mr. Beard untimely filed an Answer. On October 27, the Board filed a Motion to Compel responses to the Third Set of Interrogatories and Request for Production of Documents filed with the

16. We are bemused by the fact that Mr. Beard could remember asserting during the June 1, 2004 hearing that his client received a copy of the Order but could not actually recall his receiving the Order that same day.

17. Although not specifically plead in the petition for discipline, the June 15, 2005 Order was attached as an exhibit to the petition and incorporated by reference. This fact is not disputed by Mr. Beard.

Morehead Petition. On December 1, the Panel filed an order granting the Board's Motion to Compel and required Mr. Beard to fully and completely respond to the Third Set of Interrogatories and Request for Production of Documents by December 15. Mr. Beard never responded. As a result, the Board, on December 21, filed a Motion to Strike [Mr. Beard's] Answer to [the Morehead Petition] and Enter Judgment by Default. On February 6, 2007, the Panel filed an Order granting the Board's motion to strike and for default judgment.

### Hearing Panel Proceedings

A pre-hearing case management conference was held on July 26, 2006. At that time, it was determined that a final witness list and exhibit list would be submitted by both parties no later than December 1, 2006. Additionally, the discovery completion cutoff was set as February 1, 2007, and the cutoff for filing motions was set as April 17. Other deadlines also were established. Mr. Beard failed to submit timely a final witness and exhibit list, failed to comply with numerous discovery requests, and failed to file proposed findings of fact and conclusions of law to the Panel, as ordered by the Panel on February 6, 2007. At the final pre-hearing conference on April 24, however, Mr. Beard was given permission to file any remaining motions, if he did so "immediately."

Between October 26, 2006, and May 13, 2007, Mr. Beard never filed a single document with the Panel. He did not request that the Murray and Morehead default judgments be vacated, nor did he ask for any extensions of time to file any documents. On May 14, two days before the hearing on all three petitions, however, Mr. Beard filed a Motion to Sever and Continue, requesting that the three petitions for discipline be heard separately. The Board responded, opposing the motion.

The hearing before the Panel was held May 16, 2007. Before hearing testimony, the Panel denied Mr. Beard's Motion to Sever and Continue, noting, among other things, that the motion was untimely. The Panel also clarified that even though default judgments had been entered in the Murray and Morehead Petitions, the "parties were advised at [the time of default judgment] that the hearing panel would receive proof and testimony and argument on issues relating to all three petitions, including the extent and to what extent discipline should be imposed." The Panel also explained that "[i]f [the Board does not] call any witnesses, then the only testimony that would be relevant on [a defaulted] petition . . . is what the relevant discipline would be."

Despite the default judgment on the Morehead Petition, the Board called Mr. Morehead to testify during the Panel hearing. Counsel for the Board explained: "[Although the petition is defaulted,] I think there's a couple of things that probably need to be put in the record, just to supplement the record, on a couple of respects where [Mr. Beard] didn't admit to allegations." Mr. Beard made no objection. Mr. Morehead testified to the facts alleged in the Morehead Petition and accepted as true under the default judgment. Mr. Morehead also testified about facts not contained in the Morehead Petition. Specifically, Mr. Morehead testified that, following either the April 27 or May 11, 2005 hearings on Mr. Beard's oral motion for a rehearing and Brief in Support of Rehearing, he reminded Mr. Beard that he (Mr. Beard) had received a copy of the Order during the June 1, 2004 Juvenile Court hearing. Mr. Morehead testified:

I did not have, not a discussion in the sense of a give and take, but after one of the proceedings before the presiding judge, on the way out, the guardian [ad litem, Mr. Bradshaw] and I, . . . both

stated to Mr. Beard, You received a copy of the order. We were altogether [sic] in court. I even pointed to the spot in the lobby as we got there, stating, You stood right here and read [the Adjudicatory Order]. I was here, the guardian ad litem was there, then we went back in and discussed it with the judge.

Mr. Morehead further testified that Mr. Beard, after being told he had in fact received the June 1, 2004 Order, never filed any pleadings with the Court amending either his oral motion for a rehearing or Brief in Support of Rehearing.

After cross-examining Mr. Morehead, Mr. Beard conceded, during his own testimony, that he made a misrepresentation to the court but asserted that the misrepresentation was accidental. He testified that he had no memory of the June 1, 2004 hearing. Mr. Beard also testified that there was no doubt that Mr. Morehead spoke to him about the June 1, 2004 hearing. Mr. Beard argued, however, that it was not clear from his conversation with Mr. Morehead that he needed to go listen to the audio recording of the hearing to determine whether he had actually received the Order. On this matter, he testified:

> All I remember is the same type of thing which happens frequently between counsel, opposing counsel in the litigation where one tells the other, You're wrong, or You know your client's lying, or You know your guy did it.... It is so common and so routine that it does not

ever cause me to have any second thoughts.... If I'm told to check this, you need to look at that, that's a different matter.

Mr. Beard proffered no other evidence except his own testimony in regards to this petition for discipline.

Additionally, despite the default judgment entered in the Murray Petition, the Panel allowed Mr. Beard to testify and enter exhibits on this petition. He asserted that he did not violate any disciplinary rules in his handling of the Murray matter. He claimed that he and Mr. Horton had actually reached a binding settlement agreement prior to the trial court issuing its Memorandum Order on October 13, 2003. In support, Mr. Beard entered into evidence the transcript of Mr. Horton's deposition, taken during the professional negligence lawsuit. In the deposition, Mr. Horton asserted that he believed the parties reached a verbal [18] settlement on October 9, the day Mr. Beard wrote a letter to Mr. Horton, responding to Ms. Murray's counteroffer. The letter, also entered into evidence before the Panel, contains the following, "Happy to advise Mr. Murray to accept your counter proposal ... If [sic] you first provide to us a photocopy of the representation agreement you have with your client and a billing statement so that, in fact, we can confirm [s]he is paying an attorney's fee." The billing statement, also entered into evidence before the Panel, was not received by Mr. Beard until October 15. After the Board made no

---

18. We recognize, however, that this verbal agreement would not have been binding on the trial court until entry of the Agreed Order "or by stipulation or agreement made in open court and on the record." *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn.Ct.App.2000). As noted,

> Tennessee is one of those jurisdictions where: "the terms of the settlement should be stated to the court and taken down by

the reporter or otherwise reduced to writing so as to prevent dispute as to what are the terms of the settlement, and that an oral stipulation for compromise and settlement made in open court in the presence of the parties and preserved in the record of the court is as binding as a written agreement."

*Id.* at 539–40 (quoting 15A C.J.S. *Compromise and Settlement* § 17 at 214–15) (footnotes omitted).

objection to the introduction of this evidence, the Panel clarified that Mr. Beard's testimony and proffered exhibits were "purely argument" for the Panel to consider in deciding the appropriate discipline and were "not proof." Mr. Beard offered no other evidence on this petition.

The Panel rendered its judgment on all three petitions on May 30, 2007. With regard to the McGehee Petition, the Panel found Mrs. Lopez's testimony more credible than that of Mr. Beard. Additionally, the Panel noted,

> [h]ad [Mr. Beard] acted promptly and diligently in preparing the [final proposed order] and discovered that he had misplaced his notes, then he could have and should have ordered the transcript so that he could accurately prepare the Decree. Alternatively, [Mr. Beard] could have been candid with [Mrs. Lopez] and the Court and advised the Court and [Mrs. Lopez] that he had misplaced his notes and that he needed additional time to either locate the notes or order a copy of the transcript.

The Panel concluded that, even if Mr. Beard was unaware that the proposed final decree he filed with the court contained inaccuracies, he knew or should have known that the order contained mistakes after his late-November conversation with Mrs. Lopez. The Panel also noted that Mr. Beard never attempted to correct the erroneous final decree until after the trial court had granted Mrs. Lopez's Motion to Alter or Amend. Finally, the Panel concluded that Mr. Beard's "actions following the receipt of [Mrs. Lopez's] Motion to Alter or Amend clearly indicate that [Mr. Beard] did not take responsibility for his errors and in fact he attempted to enforce an erroneous Order of his own making on [Mrs. Lopez]."

■ Based on these findings, the Panel determined that Mr. Beard: (1) engaged "in conduct involving dishonesty, fraud, deceit, or misrepresentation," Tenn. Sup.Ct. R. 8, DR 1–102(A)(4), Tenn. Sup.Ct. R. 8, RPC 8.4(c); (2) engaged "in conduct that [wa]s prejudicial to the administration of justice," Tenn. Sup.Ct. R. 8, DR 1–102(A)(5), Tenn. Sup.Ct. R. 8, RPC 8.4(d); (3) engaged in other conduct "that adversely reflect[ed] on his fitness to practice law," Tenn. Sup.Ct. R. 8, DR 1–102(A)(6); (4) took "action on behalf of [his] client when [he] kn[ew] or . . . it [wa]s obvious that such action would serve merely to harass or maliciously injure another," *id.* 7–102(A)(1); (5) "[k]nowingly fail[ed] to disclose that which [he][wa]s required by law to reveal," *id.* 7–102(A)(3); (6) "[k]nowingly ma[d]e a false statement of law or fact," *id.* 7–102(A)(5); (7) "[k]nowingly engage[d] in other illegal conduct or conduct contrary to a Disciplinary Rule," *id.* 7–102(A)(8); (8) failed to provide competent representation, Tenn. Sup.Ct. R. 8, RPC 1.1; (9) failed to "act with reasonable diligence and promptness," id. RPC 1.3; (10) continued with a defense that was frivolous, *id.* RPC 3.1; (11) failed to "make reasonable efforts to expedite litigation," *id.* RPC 3.2; and (12) violated or attempted to violate a disciplinary rule, Tenn. Sup.Ct. R. 8, DR 1–102(A)(1), Tenn. Sup.Ct. R. 8, RPC 8.4(a).[19]

As to the Murray Petition, the Panel made no independent findings of fact, instead adopting only the facts contained in the Murray Petition and deemed admitted pursuant to the default judgment. Based on these facts, the Panel concluded that

---

**19.** The unethical conduct alleged in this petition began prior to March 1, 2003. Accordingly, the Code of Professional Responsibility governs these allegations. However, Mr. Beard's Motion to Alter and Amend, and all pleadings related to the appeal, were filed after March 1, 2003. Thus, the Rules of Professional Conduct, Tenn. S.Ct. R. 8, which became effective March 1, 2003, are applicable to those acts.

Mr. Beard: (1) failed to provide competent representation, Tenn. Sup.Ct. R. 8, RPC 1.1; (2) failed to "take such action on behalf of the client as [wa]s impliedly authorized to carry out the representation," *id.* RPC 1.2(a); (3) failed to "act with reasonable diligence and promptness," *id.* RPC 1.3; (4) failed to "keep [his] client reasonably informed about the status of a matter and comply with reasonable requests for information within a reasonable time," *id.* RPC 1.4(a); (5) failed to explain matters to his client "to the extent reasonably necessary to permit [his] client to make informed decisions," *id.* RPC 1.4(b); and (6) engaged "in conduct that [wa]s prejudicial to the administration of justice," *id.* RPC 8.4(d).

As to the Morehead Petition, the Panel, while noting that a default judgment had been granted, also recognized that testimony had been presented by each side and therefore made independent findings. Accordingly, in addition to the facts alleged in the Board's complaint, the Panel found that "[Mr. Morehead] brought to [Mr. Beard's] attention that [Mr. Beard] had in fact received a copy of the Juvenile Referee's Findings back in June of 2004 and that [Mr. Beard] had in fact discussed said Findings with [Mr. Morehead]." Consequently, the Panel concluded that even if Mr. Beard's misrepresentations of fact to the trial court were unintentional, once those misrepresentations were brought to Mr. Beard's attention, he had a duty to correct those misrepresentations and failed to do so. The Panel also noted that "[Mr. Beard] did not accept responsibility for correcting the misrepresentation, rather blaming [Mr. Morehead] for not explicitly advising him of the misrepresentation."

Based on these findings, the Panel concluded that Mr. Beard: (1) made "a false statement of fact or law to a tribunal," Tenn. Sup.Ct. R. 8, RPC 3.3(a)(1); (2) offered evidence that he knew to be false, *id.* RPC 3.3(b); (3) affirmed the validity and otherwise used evidence that he knew to be false, *id.* RPC 3.3(c), (d); (4) assisted a witness to offer false testimony, *id.* RPC 3.4(b); (5) "knowingly ma[d]e a false statement of material fact or law to a third person," *id.* RPC 4.1(a); (6) "violate[d] . . . the Rules of Professional Conduct," *id.* RPC 8.4(a); (7) engaged "in conduct involving dishonesty, fraud, deceit, or misrepresentation," *id.* RPC 8.4(c); and (8) engaged "in conduct that [wa]s prejudicial to the administration of justice," *id.* RPC 8.4(d).

After determining that Mr. Beard violated disciplinary rules, the Panel analyzed the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") in order to determine the appropriate discipline to impose.[20] Having determined that a suspension was the appropriate sanction, the Panel next considered any mitigating and aggravating factors. The Panel first considered Mr. Beard's prior disciplinary sanctions. In October 1998, Mr. Beard received a private informal admonition for failing to act with reasonable diligence and promptness. Tenn. Sup.Ct. R. 8, DR 7-101(A)(1). In June 1999, Mr. Beard received a private reprimand for engaging in conduct that was prejudicial to the administration of justice and degrading to a tribunal, and for knowingly making false accusations against a judge. *Id.* DR 1-102(A)(5), 7-106(C)(6), 8-102(B). In August 2000, Mr. Beard received a public censure for engaging in conduct that was prejudicial to the administration of justice and adversely reflected on his fitness to practice law. *Id.* 1-102(A)(1, 5-6). Mr.

---

**20.** Tennessee Supreme Court Rule 9, section 8.4, requires "the hearing panel [to] consider the applicable provisions of the *ABA Stan-* *dards for Imposing Lawyer Sanctions*" when determining the appropriate discipline.

Beard received a private reprimand in January 2001 for failing to act with reasonable diligence and promptness. *Id.* DR 7–101(A)(1). In December 2002, Mr. Beard received a public censure for failing to pursue formal discovery and/or take sufficient action to prosecute his client's case and failing, without consultation with or agreement of his client, to file a response to or appear for argument on a Motion for Summary Judgment. *Id.* DR 7–101(A)(1–4). Mr. Beard received a third public censure in June 2003, this time for engaging in conduct that adversely reflected on his fitness to practice law and for intentionally and habitually violating an established rule of procedure or evidence. *Id.* DR. 1–102(A)(6) and 7–106(C)(7). The Panel found these six disciplinary sanctions to be aggravating factors.

The Panel also considered as aggravating factors Mr. Beard's substantial experience in the practice of law, the multiple offenses that constitute a pattern of misconduct, and his "bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency." Mr. Beard offered no relevant mitigating evidence, and therefore, the Panel found no mitigating factors. Based on these findings, the Panel suspended Mr. Beard's law license for two years, imposing a two-year suspension for each petition for discipline with each suspension to run concurrently. The Panel noted that even if Mr. Beard

> was merely negligent: (1) in failing to properly draw a Final Decree, as alleged in the [McGehee Petition]; (2) in giving advice to his client to settle for $10,000 without first reading the Memorandum

Opinion which the court had already rendered and which [Mr. Beard] had in his possession, as alleged in the [Murray Petition]; and (3) in filing false pleadings and a false affidavit of his client asserting that the client had not timely received the Findings and Recommendations of the Referee, as alleged in the [Morehead Petition], the [Panel] believes that suspension would still be the appropriate discipline.

### Trial Court Proceedings

On July 30, 2007,[21] pursuant to Tennessee Supreme Court Rule 9, section 1.3,[22] Mr. Beard filed a Petition for Writ of Certiorari asserting, among other things, that the Panel erred in concluding that he had violated any of the Rules of Professional Conduct, or in the event that there was such a violation, erred in concluding that a two-year suspension of his law license was the appropriate discipline. Mr. Beard further alleged that the Panel's decision was arbitrary or capricious or characterized by an abuse of discretion and was unsupported by evidence which is both substantial and material.

On August 7, 2007, this Court assigned Senior Judge Jon Kerry Blackwood to hear the matter. On July 9, 2008, one week prior to trial, Mr. Beard filed a Motion for Recusal, asserting that there was the potential appearance that Judge Blackwood could not "preside impartially." Mr. Beard's argument stemmed from his June 7, 2007 court appearance on behalf of another client before Judge Blackwood. Mr. Beard and an Assistant District Attorney appeared in Judge Blackwood's chambers[23] to address a plea agreement

---

**21.** Mr. Beard's Petition for Writ of Certiorari was filed 61 days after the Panel's judgment order was filed. However, because the sixtieth day fell on a Sunday, Mr. Beard's petition was timely filed. Tenn. R. Civ. P. 6.01.

**22.** Mr. Beard's Petition for Writ of Certiorari incorrectly cites to Tennessee Supreme Court Rule 9, section 2, which merely sets forth the disciplinary districts.

**23.** Judge Blackwood was sitting specially in the Hamilton County Criminal Court.

reached between Mr. Beard's client and the State. During that discussion, the Assistant District Attorney raised concerns about possible attempts by Mr. Beard's client to challenge the plea agreement at a later time because of Mr. Beard's current disciplinary matters. As a result of this discussion, Judge Blackwood asked Mr. Beard's client in open court on the record whether he had been informed about Mr. Beard's pending disciplinary proceedings.

In addition to the motion for recusal, Mr. Beard requested, the day before trial, a subpoena duces tecum to the Board for the disciplinary file of the attorney who filed "Father's Bill of Exceptions and Motion to Allow His Appeal" in connection with the Morehead Petition. The Board responded by filing a Motion to Quash Subpoena.

The trial court's hearing was held on July 16, 2008. Prior to opening statements, Judge Blackwood denied Mr. Beard's Motion for Recusal, noting that he could not "recall any conversation that [he and Mr. Beard] had in chambers regarding the status or what the action entailed by the Board" and that he had "no knowledge whatsoever" of Mr. Beard's "situation" other than making sure that Mr. Beard's client was made aware of Mr. Beard's pending Board matters before accepting the plea agreement. Additionally, the court granted the Board's Motion to Quash Subpoena, noting that the trial court's review was limited to the record before the Panel. The trial court, however, proceeded to allow Mr. Beard, over objection, to call attorney Alan Beard [24] to testify "in mitigation." After hearing arguments of counsel and reviewing the entire record, the trial court affirmed the Panel's judgment in all respects.

24. Alan Beard and Jes Beard are not related.

## Standard of Review

The trial court's review of a hearing panel's decision in a disciplinary matter is governed by Tennessee Supreme Court Rule 9, section 1.3. *Bd. of Prof'l Responsibility v. Love*, 256 S.W.3d 644, 651 (Tenn.2008). As previously determined by this Court in *Love*, our review of the trial court's decision in a disciplinary matter is also reviewed under this same standard. *Id.* at 653. This standard, provides in pertinent part, as follows:

> The court may affirm the decision of the panel or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. S.Ct. R. 9, § 1.3. Although we are constrained from substituting our judgment for that of the Panel as to the weight of the evidence on questions of fact, *Love*, 256 S.W.3d at 653, we must also review the judgment below in light of this Court's "inherent power [and] essential and fundamental right to ... administer rules pertaining to the licensing ... of attorneys." *Nevin v. Bd. of Prof'l Responsibility*, 271 S.W.3d 648, 655 (Tenn.2008) (quoting *In re Burson*, 909 S.W.2d 768, 773 (Tenn.1995)). Thus, just like this Court's standard of review under the Uniform Administrative Procedures Act, our review is restricted to the record before the Panel, and where the first three grounds for reversal are not

present, we must uphold the Panel's decision "unless the decision was either arbitrary or capricious, 'characterized by an abuse, or clearly unwarranted exercise, of discretion' or lacking in support by substantial and material evidence." *Hughes v. Bd. of Prof'l Responsibility,* 259 S.W.3d 631, 641 (Tenn.2008) (quoting *CF Indus. v. Tenn. Pub. Serv. Comm'n,* 599 S.W.2d 536, 540 (Tenn.1980)). We review conclusions of law, however, under a de novo standard with no presumption of correctness. *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993).

### Analysis

Mr. Beard raises seven separate issues for review. We will address them in the order in which they occurred during the proceedings.

### Motion to Sever and Continue Murray Petition

Two days before the Panel hearing on all three disciplinary petitions, Mr. Beard filed a Motion to Sever and Continue the Murray and Morehead Petitions. Mr. Beard argues that the Panel erred in denying this motion, as to the Murray Petition, because at the time of the hearing, the professional negligence claim referenced in the Murray Petition was pending before the Court of Appeals. Mr. Beard asserts that because he subsequently "won his appeal" in the professional negligence cause of action, the Panel "found [him] guilty of misconduct in the Murray [Petition] as the result of a decision which was ultimately reversed."

Mr. Beard's argument is without merit for several reasons. First, as correctly noted by the Panel,

> [the p]rocessing of disciplinary complaints shall not be deferred or abated

because of substantial similarity to the material allegations made in other pending criminal or civil litigation or because the substance of the complaint relates to the respondent's alleged conduct in pending litigation.

Tenn. Sup.Ct. R. 9, § 11. Second, we observe that the Court of Appeals' decision did not absolve Mr. Beard of poor representation of Mr. Murray. Instead, a majority of the Court of Appeals remanded the case for a trial on the issue of liability, finding that the trial court erred in granting the sanction of default under Tennessee Rule of Civil Procedure 37 for failure to comply with discovery.[25] Third, and a repeated theme throughout this disciplinary proceeding, Mr. Beard's motion was untimely filed. Finally, Mr. Beard's argument fails to understand that the Panel's findings in this case were based on his conduct as applied to ethical rules violations. As discussed below, Mr. Beard provided incompetent representation, Tenn. Sup.Ct. R. 8, RPC 1.1, acted with unreasonable diligence and promptness, *id.* RPC 1.3, did not keep his client reasonably informed, *id.* RPC 1.4(a), and engaged in conduct that was prejudicial to the administration of justice, *id.* RPC 8.4(d). Accordingly, Mr. Beard's suspension hinged on his conduct and not on the outcome of a professional negligence claim. For these reasons, we do not find that the Panel abused its discretion in denying the Motion to Sever and Continue.

### Lack of Substantial and Material Evidence

In three substantially similar arguments, Mr. Beard asserts that the Panel's findings in all three petitions were not supported by substantial and material evi-

**25.** *Murray v. Beard,* No. E2006–01661–COA–R3–CV, 2007 WL 2437971, *5–7 (Tenn.Ct. App. Aug.29, 2007).

dence. Specifically, Mr. Beard asserts that the proof offered in support of the McGehee Petition demonstrated only "inadvertent error and excusable neglect" on his part. Additionally, with regards to the Murray and Morehead petitions, Mr. Beard asserts that, even though defaulted, the allegations alleged in those petitions were insufficient to support the Panel's findings of disciplinary rules violations.

█ In determining whether the Panel's findings are supported by substantial and material evidence, it is our duty to decide whether the Panel's decisions are "supported by 'such relevant evidence as a rational mind might accept to support a rational conclusion.' ... The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed." *City of Memphis v. Civil Serv. Comm'n,* 216 S.W.3d 311, 316–17 (Tenn. 2007) (quoting *Jackson Mobilphone Co. v. Tenn. Pub. Serv. Comm'n,* 876 S.W.2d 106, 111 (Tenn.Ct.App.1993)). "The 'substantial and material evidence' standard has also been described as requiring 'something less than a preponderance of the evidence ... but more than a scintilla or glimmer.' " *Bd. of Prof'l Responsibility v. Allison,* 284 S.W.3d 316, 322 (Tenn.2009) (quoting *Jones v. Bureau of TennCare,* 94 S.W.3d 495, 501 (Tenn.Ct.App.2002)).

█ As to the McGehee Petition, the Panel determined that Mr. Beard violated twelve disciplinary rules. After reviewing the record, we find that substantial and material evidence supported the Panel's findings. Mr. Beard waited two months before preparing the proposed final order and presumably only began working on the order because the trial court requested that it be filed immediately. Mr. Beard should have requested a copy of the trial court hearing transcript as soon as he realized he had lost his notes. He did not, noting that he did not want Mr. McGehee to incur this extra expense. This excuse is

nonsensical, especially considering that the divorce proceeding continued for more than twenty months after Mr. Beard filed his erroneous proposed final order. Moreover, the evidence demonstrates that even if the inaccuracies in Mr. Beard's proposed final order were the result of "inadvertent error and excusable neglect," he should have filed additional pleadings with the Court once Mrs. Lopez informed him that the proposed final order contained errors. He did not. Finally, Mr. Beard's repeated attempts to enforce his inaccurate proposed final order demonstrate his failure to take responsibility for his misrepresentations. Accordingly, we find that the Panel's findings were supported by substantial and material evidence.

Concerning the Murray Petition, the Panel made no independent findings of fact, instead adopting only those facts contained in the Murray Petition and deemed admitted pursuant to default. Based on these defaulted facts, the Panel found that Mr. Beard violated six disciplinary rules. Mr. Beard asserts, however, that the facts alleged in the petition were not enough to support a finding that Mr. Beard violated any disciplinary rules. We disagree.

█ Mr. Beard has not been consistent in his position about the facts in this matter. In his November 17, 2003 Motion for Relief or Guidance, Mr. Beard asserted that "prior to the parties reaching or signing the [Agreed Order, the trial court] entered [its] Memorandum Opinion." Before the Panel, however, Mr. Beard asserted that the parties reached an agreed order before the trial court entered its Memorandum Opinion and as such, his representation did not violate any disciplinary rules. The defaulted facts do not support that conclusion. Instead, these facts make clear that Mr. Beard encouraged his client to settle a case by paying $10,000.00 when he was in possession of

the trial court's order awarding his client more than $6,000.00. The facts also establish that Mr. Beard failed to keep his client timely informed, taking nearly two days to inform Mr. Murray of the trial court's findings, knowing that Mr. Murray was preparing to settle the matter. It is also clear that Mr. Beard failed to make the settlement offer timely as requested by Mr. Murray. Had Mr. Beard made the offer immediately after Mr. Murray requested that he do so, a settlement might have been signed and entered prior to the trial court entering its memorandum opinion. Based on these facts, all contained in the Murray Petition,[26] we find that the Panel's findings are supported by substantial and material evidence.

With regard to the Morehead Petition, the Panel adopted the facts contained in the petition and deemed admitted pursuant to default.[27] The Panel also considered the additional testimony of Mr. Morehead, proffered by the Board during the Panel hearing, to determine that Mr. Beard violated eight disciplinary rules. Mr. Beard asserts, however, that the facts are not enough to support a finding that Mr. Beard violated any disciplinary rules. We disagree.

■ Mr. Beard, in suffering judgment by default, admitted that he received a copy of the Order in June 2004, that his client received a copy of the Order at the same time, and that therefore, he misrepresented facts in a pleading before the trial court in 2005 when he asserted that

neither he nor his client had received the Order. Because these facts were defaulted, there was no necessity to prove them before the Panel. Therefore, the only proof that was incumbent on the Board to make was as to the appropriate sanctions to be imposed based on the admitted conduct. The Board, however, proffered the testimony of Mr. Morehead to prove additional facts, which were necessary to support additional disciplinary rules violations. Mr. Beard did not object to Mr. Morehead's testimony. In fact, Mr. Beard's own testimony supported that of Mr. Morehead. Therefore, taking into consideration the facts alleged in the default judgment, Mr. Morehead's testimony before the Panel, and Mr. Beard's testimony before the Panel, the evidence makes clear that even if Mr. Beard's misrepresentations of fact to the Court were unintentional, once those misrepresentations were brought to [Mr. Beard's] attention, he had a duty to correct those misrepresentations. He did not. Additionally, the facts establish that "[Mr. Beard] did not accept responsibility for correcting the misrepresentation, rather blaming [Mr. Morehead] for not explicitly advising him of the misrepresentation." Accordingly, we find that the Panel's findings were supported by substantial and material evidence.

### Application of Tennessee Rules of Professional Conduct

With regard to the McGehee Petition, the Panel found that Mr. Beard violated

---

**26.** Even considering the evidence proffered by Mr. Beard during the Panel hearing, we still find that the Panel's findings were supported by substantial and material evidence.

**27.** Although the Morehead Petition was defaulted, Mr. Beard and the Board proffered additional evidence before the Panel. Even considering all the evidence introduced during the Panel hearing, there is little disagreement as to the material facts in this petition.

Specifically, Mr. Beard only took issue with the fact that he did not recall having received the Order when he orally joined Father's motion and filed a Brief in Support on behalf of Mother. He did not take issue with Mr. Morehead's testimony before the Panel, specially stating before the trial court that "the hearing panel found Mr. Morehead credible. So did I. There was nothing that he said that was false. At no time during his testimony did I try to challenge him or impeach him."

multiple disciplinary rules as set forth in both the Code of Professional Responsibility and the Tennessee Rules of Professional Conduct. Mr. Beard asserts that all of the conduct at issue in this petition occurred prior to March 1, 2003, the date upon which the Tennessee Rules of Professional Conduct took prospective effect. *See* Tenn. Sup.Ct. R. 8, Transition Rules Governing the Implementation of the Tennessee Rules of Professional Conduct. Accordingly, Mr. Beard asserts that the Panel erred in finding that he violated the Tennessee Rules of Professional Conduct in connection with the McGehee Petition.

Upon review of the record, however, we find that substantial and material evidence supports the Panel's findings that Mr. Beard took actions after March 1, 2003, that violated the Rules of Professional Conduct. In discussing this petition, the Panel noted that Mr. Beard "attempted to enforce an erroneous Order of his own making" even after the receipt of Mrs. Lopez's Motion to Alter or Amend in January 2003. Specifically, the Panel noted that Mr. Beard filed a Motion to Alter or Amend the Amended Final Decree on April 9, 2003, in which he continued to defend the erroneous amount of child support obligation that he had set forth in his original proposed final order. This motion was subsequently denied. Additionally, the Panel noted that Mr. Beard filed a notice of appeal to the Court of Appeals sometime after May 12, 2003, asserting that the erroneous proposed final order, signed by the trial court on November 2, 2002, should not have been set aside because more than thirty days had passed before Mrs. Lopez filed her motion to alter or amend. Based on these findings, the Panel concluded that Mr. Beard's conduct after March 1, 2003, violated the Tennessee Rules of Professional Conduct in regards to competence, Tenn. Sup.Ct. R. 8, RPC 1.1, diligence, *id.* RPC 1.3, continuing with a frivolous defense, *id.* RPC 3. 1,

failing to expedite litigation, *id.* RPC 3.2, and misconduct, *id.* RPC 8.4. The evidence supports these findings.

### *Denial of Opportunity for Mitigation Evidence*

Tennessee Supreme Court Rule 9, section 8.2, provides that, during the Panel hearing, the attorney is "entitled to be represented by counsel, to cross examine witnesses and to present evidence in the [attorney's] own behalf." Mr. Beard asserts that he was denied the right to present mitigation proof during the Panel hearing. Mr. Beard contends that although he was allowed to present proof with regard to the McGehee Petition, the other two petitions having been defaulted, the Panel cut off his ability to proffer mitigation evidence by calling for closing arguments. We disagree.

At the beginning of the Panel hearing, although default judgments had been entered in two of the three petitions for discipline, the Panel Chairman noted that they "would receive proof and testimony and argument on issues relating to all three petitions, including the extent and to what extent discipline should be imposed." Following this announcement, the Morehead Petition was addressed. After the Board called Mr. Morehead to testify, Mr. Beard was given the opportunity to cross-examine Mr. Morehead, testify on his own behalf, and offer any other proof on the matter. The Panel Chairman stated, "Mr. Beard, are you proposing to offer any other witnesses other than yourself as to the [Morehead Petition]?" He responded, "No." Mr. Beard then proffered his own testimony.

The Panel next addressed the Murray Petition. The Panel Chairman again asked Mr. Beard if he wanted to proffer any evidence with regard to this petition, other than his own testimony. Mr. Beard

responded in the affirmative and then entered into evidence the deposition of Mr. Horton. The following colloquy then occurred:

> Panel: "Does this encompass all of the documents that you wanted to put into evidence with respect to the [Murray Petition]?"
>
> Beard: I believe so.
>
> Panel: All right. Do you have any live witnesses?
>
> Beard: Just me.

The Panel next discussed the McGehee Petition. Mr. Beard again testified on his own behalf. Following this testimony, this discussion occurred:

> Panel: Okay. Do you have anything else?
>
> Beard: No. I don't believe so.
>
> . . .
>
> Board: Is [Mr. Beard] through with his case, I guess?
>
> Panel: Apparently.
>
> Beard: Assuming that [the Board is] going to call [Mrs. Lopez to testify].
>
> Board: Yes, I am.
>
> Beard: Yes.
>
> Panel: Do you have any witnesses you want to call, Mr. Beard.
>
> Beard: No.

The Board subsequently called Mrs. Lopez to testify. At the conclusion of her testimony, the Panel again asked Mr. Beard if he had any further evidence to offer. At this time, Mr. Beard entered into evidence an "Objection to Proposed Order for Attorney's Fees," filed on behalf of Mr. McGehee in his divorce proceedings with Mrs. Lopez, and the brief he filed on behalf of Mr. McGehee before the Court of Appeals challenging the trial court's order granting Mrs. Lopez's Motion to Alter or Amend Final Order. After these documents were entered into evidence, the Panel asked for a final time if Mr. Beard had anything further to proffer before the

Panel. He responded in the negative. The Panel then called for closing arguments. Mr. Beard spoke for approximately fifteen minutes before resting. During this time, he never requested the opportunity to present any other witnesses or evidence. Given these facts, the Panel did not violate Tennessee Supreme Court Rule 9, section 8.2.

After reviewing the transcript from the Panel hearing, we do not find that Mr. Beard was denied the opportunity to present mitigation evidence. To the contrary, he was allowed to present all the testimony he offered and was asked on at least five occasions whether he had any further evidence to present. Had Mr. Beard wanted to call any other witnesses or present any other evidence on his behalf, he had ample opportunity to do so. Further, the trial court admitted, over objection, and considered the testimony of Mr. Alan Beard, offered during the trial court hearing as a mitigating witness. Even after considering this testimony, the trial court affirmed the Panel's judgment. As such, this allegation is without merit.

### Excessive Punishment

 Finally, Mr. Beard contends that the punishment assessed by the Panel and upheld by the trial court is too harsh. "In deciding an appropriate sanction when an attorney is found to have breached the rules governing his or her profession, we are required to review all of the circumstances of the particular case and also, for the sake of uniformity, [the] sanctions imposed in other cases presenting similar circumstances." *Allison,* 284 S.W.3d at 327 (citing *Bd. of Prof'l Responsibility v. Maddux,* 148 S.W.3d 37, 40 (Tenn.2004)). In this case, the Panel found four aggravating factors: Mr. Beard's six prior disciplinary sanctions, his substantial experience in the practice of law, the multiple

offenses that constitute a pattern of misconduct, and his "bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency." Considering these aggravating factors, the existence of no mitigating factors, and the suggested sanctions as set forth in the ABA Standards, the Panel concluded that Mr. Beard's conduct warranted a two-year suspension as to each complaint. *See* Tenn. Sup.Ct. R. 9, § 8.4. Although not disputing the Panel's interpretation of the ABA Standards, Mr. Beard asserts that the Panel's suspension was not comparable with sanctions imposed in similar cases. Specifically, Mr. Beard asserts that he should have received a six-month suspension. In support, Mr. Beard cites *Nevin,* 271 S.W.3d 648. In *Nevin,* similar to the case presently before the Court, three petitions for discipline were filed against the attorney. In that case, however, the Panel imposed only a six-month suspension.

■ Although we recognize that no two cases are factually identical, we agree with the Panel's conclusion that the facts in the present case warrant a greater punishment than that in *Nevin.* This Court has previously stated that any applicable aggravating and mitigating circumstances should be considered in determining the appropriate length of suspension. *Milligan v. Bd. of Prof'l Responsibility,* 166 S.W.3d 665, 674 (Tenn.2005). "Aggravating and mitigating circumstances are any considerations or factors that may justify an increase or [a] reduction in the degree of discipline to be imposed." *Id.* (quoting *Maddux,* 148 S.W.3d at 41). In this instance, Mr. Beard had, as a significant aggravating factor, six prior disciplinary sanctions, all for disciplinary rules viola-

tions similar to those in the three petitions for discipline at issue in this case. Mr. Nevin "had a single minor infraction more than ten years earlier that was resolved by private informal admonition." *Nevin,* 271 S.W.3d at 657 n. 7. Further, the Panel found that Mr. Beard, by failing to respond to Board inquiries, "engaged in a bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency." No such aggravating factor was found in *Nevin.* Moreover, Mr. Nevin proffered as mitigating factors the testimony of not less than five individuals who testified to his "excellent" professional representation and "very high" character. *Id.* at 653. Mr. Beard only proffered the testimony of Alan Beard, who testified to Mr. Beard's general veracity but admitted having no personal knowledge of the facts at issue in this case.[28] Finally, Mr. Beard was found to have violated twenty-six disciplinary rules in his three petitions for discipline. Mr. Nevin was found to have violated nine disciplinary rules. *Id.* at 655–56. Given the numerous aggravating factors in this case and the absence of any relevant mitigating factors, we find that the evidence before the Panel supports the two-year suspension imposed as to each complaint, to run concurrently to one another.

### Subpoena Duces Tecum

■ Two days before the trial court hearing, Mr. Beard served the Board with a Subpoena Duces Tecum for the records of a disciplinary complaint filed against the attorney for Father, in connection with the Morehead Petition. Mr. Beard, alleging that his conduct was "similar" to that of Father's attorney, subpoenaed his disci-

---

**28.** Although Mr. Beard proffered no mitigating evidence before the Panel, the trial court, over objection, allowed Mr. Beard to proffer the testimony of Alan Beard. Under our standard of review, we consider "the transcript of the record from the ... chancery court." Tenn. S.Ct. R. 9, § 1.3.

plinary records, hoping that he could show the trial court that Father's attorney received a lesser disciplinary sanction.[29] The Board subsequently filed a Motion to Quash Subpoena. The trial court orally granted the Board's motion during trial, asserting that its review was limited to the record before the Panel. Tenn. Sup.Ct. R. 9, § 1.3. Mr. Beard asserts that the trial court abused its discretion in failing to allow introduction of the record.

 "The abuse of discretion standard is intended to constrain appellate review and implies 'less intense appellate review and, therefore, less likelihood of reversal.'" *State ex rel. Jones v. Looper,* 86 S.W.3d 189, 193 (Tenn.Ct.App.2000) (quoting *BIF v. Serv. Constr. Co.,* No. 87–136–II, 1988 WL 72409, at *2 (Tenn.Ct. App. July 13, 1988)). Thus, "[a] party seeking to have a lower court's holding overturned on the basis of abuse of discretion undertakes a heavy burden." *Id.* "Unless a trial court has applied an incorrect legal standard, or it affirmatively appears on the record that a trial court abused its discretion, appellate reversal is not warranted." *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn.1996).

Upon review of the record, we find that this issue is without merit. We first note that every disciplinary case is different, such that no two cases can be compared exactly. Second, this Court has previously noted that the trial court's review of a hearing panel decision "shall be on the transcript of the evidence before the hearing panel and its findings and judgment," unless "allegations of irregularities in the procedure before the panel are made." *Love,* 256 S.W.3d at 651 (quoting Tenn. Sup.Ct. R. 9, § 1.3). Before the trial court, Mr. Beard alleged no irregularities in the Panel hearing for failing to consider

the disposition of any disciplinary proceedings against Father's attorney. And as such, the trial court had no authority to consider this additional evidence. Accordingly, we find that the trial court correctly granted the Board's Motion to Quash Subpoena.

### *Motion for Recusal*

 Finally, Mr. Beard asserts that Judge Blackwood erred in denying the motion for recusal. Upon review of the record, we disagree.

This Court most recently addressed judicial disqualification in *Bean v. Bailey,* 280 S.W.3d 798 (Tenn.2009). In *Bean,* we noted,

> Tennessee Supreme Court Rule 10, Canon 3(E)(1) states, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer. . . ." We have held that a recusal motion should be granted when "the judge has any doubt as to his or her ability to preside impartially in the case" or "'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" Even if a judge believes he can be fair and impartial, the judge should disqualify himself when "'the judge's impartiality might be reasonably questioned'" because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias."

*Id.* at 805 (citations omitted). Accordingly, this Court has determined that, when ruling on a motion for recusal, the judge

---

**29.** It is unclear from the record whether Father's attorney actually received a lesser disci-

plinary sanction or was sanctioned at all.

should subjectively determine whether she can remain fair and impartial but also consider objectively whether there is the appearance of bias or prejudice. This Court has also noted that "[a] motion for recusal based upon the alleged bias or prejudice of the trial judge addresses itself to the sound discretion of the trial court and will not be reversed on appeal unless clear abuse appears on the face of the record." *State v. Hines*, 919 S.W.2d 573, 578 (Tenn.1995) (citing *State ex rel. Phillips v. Henderson*, 220 Tenn. 701, 423 S.W.2d 489, 492 (1968)).

In this case, Judge Blackwood stated on the record what he could recall about a conversation with Mr. Beard and a subsequent acceptance of a plea agreement that occurred on June 7, 2007, more than one year before the motion for recusal was filed. Although noting that he remembered Mr. Beard's pending disciplinary matters being mentioned, Judge Blackwood asserted that he could not "recall any conversation . . . regarding the status or what the action [by the Board] entailed." Judge Blackwood also stated that "no cases that Mr. Beard handled during the period of time that I was [sitting specially in Hamilton County Criminal Court] stand out in my mind." Under these circumstances, Judge Blackwood denied Mr. Beard's motion, implicitly determining that he had no "doubt as to his . . . ability to preside impartially." *Bean*, 280 S.W.3d at 805 (quoting *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564 (Tenn.2001)).

As to the objective question, it is unclear whether Judge Blackwood considered whether a person of ordinary prudence in his position would find a reasonable basis to question his impartiality. In the interest of judicial economy, and in light of the fact that these petitions for discipline have been pending for more than five years, the case will not be remanded to consider the potential appearance of bias or prejudice. *Id.* (citing *Alley v. State*, 882 S.W.2d 810, 823 (Tenn.Crim. App.1994)). Instead, we will consider the merits of the motion for recusal.

Upon review, we find nothing in the record to support a finding that a person of ordinary prudence, "knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Id.* (quoting *Davis*, 38 S.W.3d at 564). There was nothing in the record to suggest that Judge Blackwood had any animosity towards Mr. Beard. And nothing Mr. Beard asserted in support of recusal implied any appearance of bias or prejudice on the part of Judge Blackwood. Instead, Mr. Beard merely asserted that his disciplinary matters had been made known to Judge Blackwood before the judge was assigned to the case. Mr. Beard does not allege that any information transmitted during the 2007 conversation was not also contained in the record which the Judge Blackwood carefully considered before rendering judgment. We are not persuaded that the mere prior knowledge of the existence of a disciplinary proceeding would lead a person of ordinary prudence to question a judge's impartiality. Accordingly, we find that the trial court did not abuse its discretion in denying Mr. Beard's Motion for Recusal.

### Conclusion

For the reasons stated above, we affirm the trial court's judgment in all respects. Costs of this appeal are assessed to Jes Beard, and his surety, for which execution may issue if necessary.

SHARON G. LEE, J., not participating.