FILED
06/29/2018
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 9, 2017 Session

## BONNIE HARMON ET AL. v. HICKMAN COMMUNITY HEALTHCARE SERVICES, INC.

### Appeal from the Circuit Court for Hickman County
### No. 14-CV-6  Deanna B. Johnson, Judge

_____

### No. M2016-02374-COA-R3-CV

_____

W. NEAL MCBRAYER, J., dissenting.

This appeal arises out of an order granting the defendant, Hickman Community Healthcare Services, Inc., summary judgment. Plaintiffs Bonnie Harmon, Jenny Fagan, and Edward Fagan, the surviving children of Pamela Rudder, claim that the case turns on whether the trial court abused its discretion in any one of three pivotal decisions. The first two decisions relate to the competency of experts who submitted affidavits and declarations in support of and in opposition to summary judgment. The last of the decisions relates to a motion to alter or amend the summary judgment, which was styled as a "motion to revise."

The majority concludes that the trial court erred in denying the motion to revise. Because on this record I cannot conclude that the trial court abused its discretion in any of the three decisions, I respectfully dissent.

The trial court granted summary judgment because it concluded on the undisputed facts that the plaintiffs could not prove causation. *See* Tenn. Code Ann. § 29-26-115(a) (2012) (requiring a plaintiff in a health care liability action to establish, among other things, that "[a]s a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred"). The plaintiffs' theory relied on proving that Ms. Rudder died from acute drug withdrawal.

In support of its motion for summary judgment, the defendant relied on the affidavit of Donna Seger, M.D. Through her affidavit, Dr. Seger, who is board certified in emergency medicine and toxicology, testified that Ms. Rudder's vital signs taken in the days leading up to her death were inconsistent with a person experiencing drug

withdrawal. She also expressed her opinion that Ms. Rudder had hypertensive heart disease and more likely than not died from a cardiac arrhythmia.

In opposition to the motion for summary judgment, the plaintiffs submitted the declarations of Martin H. Wagner, M.D. Through his declarations, Dr. Wagner, who is board certified in neurology and psychiatry, opined that Ms. Rudder "suffered severe alcohol and benzodiazepine withdrawal symptoms resulting in her death at 12:15 a.m. on the early morning of 12/16/2011."

The trial court determined that the plaintiffs' expert, Dr. Wagner, was not competent to testify on the issue of causation. The court based this determination on the fact that Dr. Wagner was not experienced in the specialty of toxicology or pharmacology. *See* Tenn. Code Ann. § 29-26-115(b). Specifically, the trial court ruled as follows:

> In the instant case, Dr. Wagner's Declaration indicates that he was expected to testify concerning Decedent's alleged benzodiazepine addiction and subsequent withdrawal, resulting in her death. However, Dr. Wagner never states in his Declaration that he has any special knowledge in the fields of toxicology or pharmacology, nor is any relevant specific training or experience revealed by his attached curriculum vitae. Not all medical doctors are interchangeable as experts in medical cases. *See* [*Mitchell v. Jackson Clinic, P.A.*, 420 S.W.3d 1 (Tenn. Ct. App. 2013)]. Dr. Wagner's professional specialty is neurology, which he has been practicing exclusively since 1984, a distinct field from the specific type of alleged drug addiction and withdrawal this case involves. Dr. Wagner does not state in his Declaration that he has any special knowledge concerning the "specific issues raised" in this case as required by *Mitchell. Id.* Just as the emergency room physician in *Mitchell* was disallowed from acting as an expert witness regarding a pediatric issue due to his lack of formal, recent experience, there is simply no evidence to support a finding that Dr. Wagner has current or recent expertise in the pertinent field of toxicology, specifically benzodiazepine addiction, treatment, or withdrawal. *Id.*

The plaintiffs submit that the trial court erred, not only in determining that Dr. Wagner was not competent to testify on causation, but also in impliedly determining that the defendant's expert, Dr. Seger, was competent to provide testimony on the causation issue. Thus, in the plaintiffs' view, the defendant failed to satisfy its burden of production on summary judgment. *See* Tenn. R. Civ. P. 56.04; *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) ("[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2)

by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense.").

"A trial court's decision to accept or disqualify an expert medical witness is reviewed under the abuse of discretion standard." *Shipley v. Williams*, 350 S.W.3d 527, 552 (Tenn. 2011). "A trial court abuses its discretion when it disqualifies a witness who meets the competency requirements of section 29-26-115(b) and excludes testimony that meets the requirements of [Tennessee Rules of Evidence] 702[1] and 703.[2]" *Id.*

In my view, the plaintiffs' argument that Dr. Seger was not competent to provide testimony on causation can be quickly dispensed with because I consider it waived. Excluding a footnote, the plaintiffs devoted only two full sentences to the argument in the brief on appeal. The plaintiffs complain that "Dr. Seger's Affidavit fails to establish that Dr. Seger actually practiced emergency medicine/toxicology in Tennessee or a contiguous bordering state during the year prior to the subject injury."

The plaintiffs do not cite to the record where this issue was raised before the trial court. Based on my independent review of the record, the closest the plaintiffs come to such an objection is in their responses to the defendant's statement of undisputed facts. The defendant claimed the following fact as undisputed: "Dr. Seger is competent to testify concerning the signs and symptoms of drug withdrawal from benzodiazepines, known as Xanax."[3] The plaintiffs responded: "Disputed. This fact is disputed by Dr. Seger's Affidavit and CV." But as the trial court pointed out in its order, the plaintiffs did "not specify what about Dr. Seger's Affidavit and CV indicate that Dr. Seger is not competent to testify." The plaintiffs cannot expect relief from an error when they have

---

[1] Tennessee Rule of Evidence 702 provides "[i]f scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise."

[2] Tennessee Rule of Evidence 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

[3] This statement does not qualify as "material fact" within the meaning of Tennessee Rule of Civil Procedure 56.03. But my focus is only on whether the issue of Dr. Seger's competency was properly preserved for appeal.

failed take action reasonably available to prevent the harmful effect of the error. *See* Tenn. R. App. P. 36(a).

I concede that Dr. Wagner's competency to testify on the issue of causation is a much closer question. To determine whether an expert is competent to testify under Tennessee Code Annotated § 29-26-115(b):

> [W]e must first determine the issues and claims in the case before us. Then, we can determine whether [the proffered expert] practices "a profession or specialty which would make the individual's expert testimony relevant to the issues in the case." Tenn. Code Ann. § 29-26-115(b). A court's inquiry into the competency of a proffered witness requires an examination of the issues presented in the case to determine whether the expert's profession or specialty makes the expert's testimony relevant to those issues.

*Mitchell v. Jackson Clinic, P.A.*, 420 S.W.3d 1, 8 (Tenn. Ct. App. 2013) (quoting *Westmoreland v. Bacon*, No. M2011-01811-COA-RM-CV, 2013 WL 765091, at *5 (Tenn. Ct. App. Feb. 26, 2013)). "Although . . . specialization is not a prerequisite to the ability of a doctor to offer expert testimony, the purported expert must, nonetheless, have practiced in an area that would allow him or her to testify expertly concerning the specific issues raised in the lawsuit." *Id.* at 11.

At issue here is whether drug withdrawal led to or caused Ms. Rudder's death. In opposing the motion for summary judgment, the plaintiffs did not present any evidence that Dr. Wagner could offer relevant testimony on this issue. Dr. Wagner's declarations, report, and CV do not reflect any experience with alcohol and benzodiazepine withdrawals, and there is no other testimony or evidence in the record that the practice of psychiatry or neurology would qualify a doctor to provide relevant testimony on the cause of Ms. Rudder's death. While the plaintiffs were not required to produce an expert in the fields of toxicology, pharmacology, or even drug addiction and withdrawal, the plaintiffs were required to show that their expert's profession or specialty made his testimony relevant to the issue of causation. *See* Tenn. Code Ann. § 29-26-115(b). On this record, I cannot conclude that the trial court erred in excluding Dr. Wagner's declarations.

Finally, on the issue of the motion to revise, I concur with the majority that the trial court appropriately treated the motion as a motion under Rule 59 to alter and amend. When, as here, the basis for the motion is to alter or amend an order granting summary judgment based on newly submitted evidence, the trial court should consider the following:

[1] [T]he moving party's effort to obtain the evidence in responding to the summary judgment; [2] the importance of the new evidence to the moving party's case; [3] the moving party's explanation for failing to offer the evidence in responding to the summary judgment; [4] the unfair prejudice to the non-moving party; and any other relevant consideration.

*Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003) (citing *Harris v. Chern*, 33 S.W.3d 741, 745 (Tenn. 2000)).   A trial court's decision on a motion to alter or amend is reviewed for an abuse of discretion.   *Harris*, 33 S.W.3d at 746.

The Tennessee Supreme Court has explained what a trial court must consider in making discretionary decisions and what constitutes an abuse of discretion:

Discretionary decisions must take the applicable law and the relevant facts into account.   An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (internal citations omitted).

Appellate review of discretionary decisions is limited.   *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009).   The appellate court should not "second-guess the court below" or "substitute their discretion for the lower court's." *Lee Med., Inc.*, 312 S.W.3d at 524.   In reviewing discretionary decisions, appellate courts consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.*

Applying this standard to the decision of the trial court to deny the motion to revise, I cannot conclude that the trial court abused its discretion.   Although the plaintiffs sent two emails to another potential expert witness, Dr. Kris Sperry, in my view the plaintiffs might have put forth more effort, perhaps a phone call to Dr. Sperry's office.   In addition, I am troubled by the fact that, after receiving no response from either email to Dr. Sperry, the plaintiffs did not pursue the seemingly logical step of requesting a continuance of the hearing on the motion for summary judgment.   *See* Tenn. R. Civ. P. 56.07.   And then the plaintiffs waited several months after the hearing on summary judgment, after the trial court had granted summary judgment to the defendant, before submitting the declaration of Dr. Sperry.   While I agree with the majority that there was

no apparent prejudice to the defendant in granting the motion to revise, in looking at all of the *Stovall v. Clarke* factors, denial of the motion to revise was not outside the range of acceptable alternative dispositions.

_____
W. NEAL McBRAYER, JUDGE