IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 10, 2015

**KRISTI L. BOREN v. DANIEL P. ROUSOS**

**Appeal from the Chancery Court for Williamson County**
**No. 33530       Robbie T. Beal, Judge**

_____

**No. M2014-02504-COA-R3-CV – Filed November 13, 2015**
_____

Mother filed a petition seeking to have Father held in criminal contempt for violating the parties' parenting plan and mutual restraining order. The trial court found Father guilty of two of ten counts of criminal contempt and sentenced him accordingly. Father appeals, arguing the evidence was insufficient to prove his guilt beyond a reasonable doubt. We affirm the trial court's judgment in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Joanie L. Abernathy, Franklin, Tennessee, for the appellant, Daniel P. Rousos.

Helen Sfikas Rogers and Siew-Ling Shea, Nashville, Tennessee, for the appellee, Kristi L. Boren.

**OPINION**

I. BACKGROUND

This is a post-divorce case in which Daniel P. Rousos ("Father") appeals the trial court's judgment finding him in criminal contempt on two counts of a petition filed by Kristi L. Boren ("Mother"). The parties have three children who were six, eight, and eleven years old when the parents were granted a divorce in May 2009. The parties have been in near constant litigation since the divorce. Mother and Father have both filed motions to amend the initial parenting plan, and in March 2010, the trial court entered a permanent parenting

plan that included the following language in the preamble:

> The mother and father will behave with each other and each child so as to provide a loving, stable, consistent and nurturing relationship with the child even though they are divorced. They will not speak badly of each other or the members of the family of the other parent. They will encourage each child to continue to love the other parent and be comfortable in both families.

> Section VI of the parenting plan was entitled "Rights of Parents," and it stated: Under T.C.A. § 36-6-101 of Tennessee law, both parents are entitled to the following rights:

> . . . .

> > (6)   The right to be free of unwarranted derogatory remarks made about the parent or his or her family by the other parent to the child or in the presence of the child.

Mother and Father agreed to a mutual restraining order that was entered as an Agreed Order on July 22, 2011. The restraining order provided, in pertinent part, that:

> [A] mutual restraining order shall be entered to allow for social contact between the parents to allow for contact at school or sporting events provided that the parents maintain a distance of at least ten (10) feet from each other at those events. The mutual restraining order shall further provide that Kristi Boren and Daniel Rousos will communicate on parenting issues concerning the minor children only as to the factual issues absolutely necessary to be communicated between the parents and this communication shall only take place through via [sic] e-mail and text message. . . . It is accordingly,

> > ORDERED, ADJUDGED and DECREED that the current Order of Protection shall be dismissed with costs equally divided and a mutual restraining order shall be and is hereby entered to allow for only social contact between the parents, Kristi Boren and Daniel Rousos, and to allow for only contact at school or sporting events provided, however, that the parents shall maintain a distance of at least ten (10) feet from each other at those events, and it is further

> > ORDERED, ADJUDGED and DECREED that Kristi Boren and Daniel Rousos will communicate on parenting issues concerning the minor children

2

only as to the factual issues absolutely necessary to be communicated between the parents and this communication shall only take place via e-mail and text message, and it is further

. . . .

ORDERED, ADJUDGED and DECREED that the mutual restraining order as to the parents . . . shall remain in effect until the parties' youngest child . . . turns eighteen (18 years old), or pending further orders of the court.

Mother filed a petition for civil and/or criminal contempt against Father in August 2012, and she filed an amended petition six months later, in February 2013. Mother included two counts of civil contempt and ten counts of criminal contempt in her amended petition. The trial court bifurcated the criminal allegations from the civil allegations for purposes of the trial and tried Mother's criminal allegations on April 15 and 16, 2013. The court entered an Order on June 6, 2013, finding Father guilty beyond a reasonable doubt of two counts of criminal contempt. The trial court found Father was guilty of Counts Three and Twelve of Mother's amended petition, which alleged the following:

## COUNT THREE

### Criminal Contempt

17. Under the amended permanent parenting plan entered on March 16, 2010, the parents were required to "behave with each other and each child so as to provide a loving, stable, consistent and nurturing relationship with the child even though they are divorced. They will not speak badly of each other or the members of the family of the other parent. They will encourage each child to continue to love the other parent and be comfortable in both families."

18. Further, under Section VI. Rights of Parents, each parent had certain rights under Tenn. Code Ann. § 36-6-101, specifically "[t]he right to be free of unwarranted derogatory remarks made about the parent or his or her family by the other parent to the child or in the presence of the child." . . .

. . . .

22. The children have . . . reported that Father constantly spoke badly about Mother and that they are tired of it. For example, Mr. Rousos made the following derogatory comments:

3

a)  On or about May 14, 2012, Father questioned Andrew Rousos extensively about Mother's tax returns and told him that Mother and her husband were lying and cheating on their taxes and are going to jail. . . .

b)  On or about May 11, 2012, Andrew Rousos questioned Mother if she used TurboTax and about their apartment in Spring Hill.  Father is clearly going over the details of Mother's tax returns with the child.

c)  On or about May 11, 2012, Andrew reported to Mother that when he objected to Father telling him negative things about his Mother, Father and his present wife sat him down and told him "he has to know these things" and continued to tell him negative things about Mother. . . .

. . . .

## COUNT TWELVE

## Criminal Contempt

59.  Under the Agreed Order [that] was entered on July 22, 2011, a mutual Restraining Order was entered to allow for only social contact between the parties at school or sporting events and that at those events the parties shall maintain a distance of at least ten (10) feet from each other.  Despite Mother's request that Father place Andrew's prescription for an ear infection in his mailbox and allow her to retrieve same, on July 22, 2012, Father approached her car and handed her the medicine and explained the medications to her in willful violation of the Agreed Order.  Father had already e-mailed Mother about taking Andrew to the doctor and also e-mailed her the specifics on the medication.  Father stated that he did not feel comfortable allowing Andrew, who was eleven (11) years old to carry the prescription from his house down to Mother's car, which is absolutely ludicrous.  Father refuses to abide by the orders of this Court and insists on communicating and interacting at every opportunity with Mother even though she has made it very clear that she is afraid of him and wants to have no interaction with him. . . .

Mother asked that Father be punished by fine and/or imprisonment for ten days for each count of criminal contempt.

The trial court concluded Father was guilty of Counts Three and Twelve based on

Mother's testimony, Father's sworn deposition testimony, and the exhibits introduced at trial. The court wrote that it is:

>    **ORDERED, ADJUDGED and DECREED** that Father, Daniel P. Rousos, is found guilty beyond a reasonable doubt of Count Three of Mother's Amended Petition for making derogatory remarks about Mother to the children or in their presence. Andrew Rousos' statements in or about May 2012 that Mother and her husband lied on their taxes was corroborated by Father's sworn deposition testimony. There was no other place the child could have received tax information other than from the Father, and it was a contemptuous comment. The children's statements that Mother cannot be trusted was corroborated by Father's sworn deposition testimony and it was a contemptuous comment; and it is further,
>
>    **ORDERED, ADJUDGED and DECREED** that Father is found guilty beyond a reasonable doubt of Count Twelve of Mother's Amended Petition for violating the Restraining Order entered on July 22, 2011, by Father approaching Mother's vehicle and having a dialogue with Mother about the child's prescription medication on July 22, 2012. Father also admitted in his sworn deposition testimony to contacting Mother while the children were on the telephone with her . . . .

The trial court sentenced Father to ten days of incarceration for each count of criminal contempt, a sentence that was to be suspended after Father served a total of forty-eight consecutive hours in jail.[1] The court dismissed all of Mother's remaining counts of criminal contempt either because they were withdrawn, not prosecuted, outside the statute of limitations, or not proven beyond a reasonable doubt as criminally contemptuous.

Father appeals the trial court's judgment, arguing that the evidence was insufficient to prove beyond a reasonable doubt that he willfully violated the court's orders by making derogatory remarks about Mother to the children or in their presence and by approaching Mother's vehicle and speaking to her on July 22, 2012. Mother also raises an issue on appeal, arguing that the trial court erred in not finding Father guilty of criminal contempt on Count Five of Mother's amended petition.

## II. ANALYSIS

---

[1]The trial court stayed Father's jail sentence until the final hearing on Father's two petitions against Mother alleging criminal contempt.

A. Standard of Review

Convictions for criminal contempt are punitive in nature, and "their primary purpose is to vindicate the court's authority." *Long v. McAllister-Long*, 221 S.W.3d 1, 12 (Tenn. Ct. App. 2006); *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citing *Gunn v. S. Bell Tel. & Tel. Co.*, 296 S.W.2d 843, 844 (Tenn. 1956)). An individual charged with criminal contempt for failing to comply with a court's order enjoys a presumption of innocence and must be found guilty beyond a reasonable doubt. *Long*, 221 S.W.3d at 13 (citing *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996)). An individual found guilty of criminal contempt may be imprisoned for up to ten days for each offense, fined $50, or both. Tenn. Code Ann. § 29-9-103; *Thigpen*, 874 S.W.2d at 53. Sanctions for criminal contempt are imposed for no reason other than punishment, so that an individual imprisoned cannot win his or her freedom simply by complying with a court's order. *Long*, 221 S.W.3d at 12-13 (citing *Robinson v. Fulliton*, 140 S.W.3d 304, 310 (Tenn. Ct. App. 2003)).

Once an individual is convicted of criminal contempt, he or she loses the presumption of innocence and must overcome his or her presumption of guilt on appeal. *Thigpen*, 874 S.W.2d at 53 (citing *Nuclear Fuels Servs., Inc. v. Local No. 3-677, Oil, Chem., & Atomic Workers Int'l Union*, 719 S.W.2d 550, 552 (Tenn. Crim. App. 1986)). "'Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt.'" *Moody v. Hutchison*, 159 S.W.3d 15, 25 (Tenn. Ct. App. 2004) (quoting *Barber v. Chapman*, No. M2003-00378-COA-R3-CV, 2004 WL 343799, at *2 (Tenn. Ct. App. Feb. 23, 2004) (further citation and quotation omitted)). Our Supreme Court has determined that a trial court has "sound discretion" to determine how best to punish an individual who has failed to comply with its orders. *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964). Appellate courts, therefore, apply an abuse of discretion standard when reviewing a trial court's decision to impose sanctions for criminal contempt. *Moody*, 159 S.W.3d at 25 (citing *Barber*, 2004 WL 343799, at *2); *see Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993) (noting that appellate courts review trial court's punishment for criminal contempt for "plain abuse of discretion") (citation omitted). "The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." *Lee Med. Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009)). The reviewing court is not permitted to "second-guess" the trial court's decision or "substitute their discretion for the lower court's." *Id.* (citing *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), and *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003)).

B. Count Three of Mother's Petition

In Count Three of Mother's petition for criminal contempt, Mother alleged that Father spoke badly about Mother and her husband and that he made derogatory remarks to the children or in their presence in violation of the parenting plan dated March 2010. In support of Count Three of her petition, Mother testified as follows:

Q:  Now, last May 2012 did the children make any comments to you about your taxes when it was time to file them?

A:  Yes.

Q:  What comments were being made?

A:  That John and I were lying on our taxes. We were cheating on our taxes. . . . That we made - - that we were lying and cheating on our taxes and that they - - that we would be going to jail. Andrew also asked me if I used TurboTax, and he also asked me if I had an apartment in Spring Hill. And I looked back at my taxes, and there was indeed the address of a P.O. Box in Spring Hill on the taxes . . . .

. . . .

Q:  How old was Andrew when he made these statements to you?

A:  He was 11.

Q:  And have you-all discussed with Andrew tax situations at all?

A:  No, ma'am.

 . . . .

Q:  Do you exchange tax returns with the father every year?

A:  Yes.

Q:  And did you provide the father with your tax returns?

A:  Yes.

Q:      And did you provide the father with your tax returns for April 2012?

A:      Yes.

Q:      And after you did that, that's when the child made these statements, is that right?

A:      Yes.

. . . .

Q:      And what other comments has Mr. Rousos made to the children about trusting you or not trusting you?

A:      That he can't trust me, that I lied too many times.

Father did not testify at the trial, but he gave a deposition during which he stated the following under oath:

Q:      Have you ever expressed the opinion that John Boren screws the U.S. Government out of money every year?

A:      Yes.

Q:      And tell me what you claim John Boren is doing.

A:      He's cheating on his taxes.

. . . .

Q:      Have you told [the children] you don't trust [their mother]?

A:      Maybe, or maybe in context, I - - I don't trust that she would make the right decision. . . . [W]hen they would ask something . . . , you know, I might say "I" - - "I" - - "I can't allow that because I can't trust that she's going to do the right thing in return." . . . And [Nicholas] would say, "Why can't you trust her?" and I would say, "Well, because the last time, she" - - "just recently when we did this, she didn't notify me until the last minute, she was an hour and a half late, you missed out on all the family events that we had already previously scheduled, and she didn't do what she said she was going to do,"

8

something like that.

Father's counsel objected at trial to Mother's testimony regarding statements made by the children, contending that these statements were inadmissible hearsay. Father repeats the same argument on appeal. The trial court ruled that the statements were not admitted for the truth of the matter asserted but to show the statements were made and that they originated with Father. The court explained,

> [T]his is not hearsay. It doesn't go to prove any truth of the matter asserted, whether someone is lying on their taxes or not, not that important. But if the kids have stated this and it's assumed it's coming from the father, that could be contemptuous conduct and can be allowed.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TENN. R. EVID. 801(c). Unless the Rules of Evidence specify otherwise, statements that qualify as hearsay are not admissible evidence. TENN. R. EVID. 802. We agree with the trial court that the statements by Mother that Father objected to did not constitute hearsay because the statements were introduced, not for their veracity, but to show that they were made to or in the presence of the children. *See State v. McCoy*, 459 S.W.3d 1, 11 (Tenn. 2014) (stating out-of-court statement is not hearsay if it is offered to show its effect on the hearer rather than its truth or falsity); *Crabtree v. Crabtree*, 716 S.W.2d 923, 925 (Tenn. Ct. App. 1986) (concluding out-of-court statement offered to show state of mind is not hearsay).

Father also contends he was not put on notice in accordance with Tenn. R. Crim. P. 42(b) that Mother was seeking to hold him in criminal contempt for telling the children that Mother could not be trusted. Proceedings for criminal contempt must comply with the notice provisions set forth in Rule 42(b) of the Tennessee Rules of Criminal Procedure.[2] *Long*, 221 S.W.3d at 13; *Knellinger v. Knellinger*, M2012-02343-COA-R3-CV, 2013 WL 4714432, at *4 (Tenn. Ct. App. Aug. 29, 2013).

The record does not indicate, and Father does not contend in his brief, that he raised an issue regarding inadequate notice at trial. The appellate court may treat issues that are raised for the first time on appeal as waived. *Watson v. Watson*, 309 S.W.3d 483, 497 (Tenn.

---

[2]Rule 42(b)(1) of the Tennessee Rules of Criminal Procedure requires that the notice for criminal contempt shall:

(A) state the time and place of the hearing;
(B) allow the alleged contemner a reasonable time to prepare a defense; and
(C) state the essential facts constituting the criminal contempt charged and describe it as such.

Ct. App. 2009); *see Alexander v. Armentrout*, 24 S.W.3d 267, 272 (Tenn. 2000) (holding the plaintiff waived the defense of equitable estoppel on appeal where he failed to raise this defense during trial court proceedings). Further, as Mother points out, Father did not object to Mother's testimony at trial when she testified that Father had told the children he could not trust her or that she had lied. In any event, Father had notice that Count Three of Mother's petition was based, in part, on Father's violation of the preamble and Section VI of the 2010 parenting plan. The preamble precluded Father from speaking badly about Mother or her family, and Section VI provided that each parent was entitled to "be free of unwarranted derogatory remarks made about the parent . . . by the other parent to the child or in the presence of the child." Statements that Mother lies or cannot be trusted constitute derogatory and negative remarks about Mother. For all of these reasons, Father's argument regarding inadequate notice is without merit.

Our review of the evidence presented in support of Count Three of Mother's petition leads us to conclude that Father has failed to overcome his presumption of guilt on appeal and that the evidence presented at trial was sufficient to support the trial court's finding of contempt beyond a reasonable doubt. Mother's testimony was undisputed. As the trial court concluded, there was no other place the children could have received tax information other than from Father, and the statements ascribed to Father were contemptuous. The children's statements that Father told them Mother could not be trusted were corroborated by Father's sworn deposition testimony, and these too were contemptuous.

C. Count Twelve of Mother's Petition

Count Twelve of Mother's petition related to the mutual restraining order entered in July 2011 that restricted the parties from communicating with one another in any way other than by text message or e-mail and limited the subject of their communications to "parenting issues concerning the minor children only as to the factual issues absolutely necessary to be communicated between the parents." When the parties both attended a school or sporting event, they were required to maintain a distance of ten feet between them. According to Mother's petition, Father violated this mutual restraining order on July 22, 2012, when he approached Mother's vehicle to personally deliver one of the boys' medicines to her. Mother further stated that Father violated the restraining order on other occasions "and insists on communicating and interacting at every opportunity with Mother even though she has made it very clear that she is afraid of him and wants to have no interaction with him."

In support of her petition, Mother testified about the incident on July 22, 2012, when Father approached her vehicle. She testified that Father had sent her an earlier e-mail indicating his intent to hand-deliver their son's medication to her when she came to pick up the children. Mother responded by e-mail that she would prefer Father leave the medicine in

the mailbox, but that Father insisted on personally delivering it to her vehicle and giving Mother directions about the medication in violation of the restraining order. Mother also testified that after the restraining order was put into place, there were occasions when the children were with Father and were speaking with her on the telephone, and that Father has taken the phone away from the children to speak with Mother himself. Father corroborated this when he testified during his deposition:

> Q:     Have you ever had the children call on their cell phones and then attempted to talk to Mrs. Boren?
>
> A:     I think so. . . .
> . . . .
>
> Q:     How many times have you taken one of the children's phones to talk with Mrs. Boren?
>
> . . . .
>
> A:     I don't know. A couple of times, maybe. Two or three times. I - - I don't really have any recollection.[3]

Father contends the language of the mutual restraining order is "vague and ambiguous" and that the order does not specifically state that the parties are to stay away from each other when transferring the children between homes. Father is correct that an order must be "clear, specific and unambiguous" before an individual can be held in contempt for violating it. *See Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354 (Tenn. 2008) (concluding court order that individual allegedly violated must be lawful as well as clear, specific, and unambiguous). Contrary to Father's argument, however, we find the Agreed Order containing the mutual restraining order is very clear. The trial court ordered that the parties' "communication shall only take place through via [sic] e-mail and text message." The parties were permitted to have social contact at school or sporting events, but they were directed to maintain a distance of "at least ten (10) feet from each other at those events." Father's attempts to speak with Mother using the children's cell phones is a clear violation of the court order, as was his approaching Mother's vehicle and coming within ten feet of Mother to hand deliver their child's medication, especially when the parties were not at a school or sporting event.

---

[3]Mother introduced into evidence an e-mail from Father dated March 12, 2012, in which Father wrote, "I have emailed once, texted once, and called once today regarding this topic . . . ." This proves Father attempted to contact Mother by telephone, in violation of the court order, after its effective date.

Our review of the evidence presented in support of Count Twelve of Mother's petition leads us to conclude that Father has failed to overcome his presumption of guilt on appeal and that the evidence presented at trial was sufficient to support the trial court's finding of contempt beyond a reasonable doubt.

### D. Mother's Issue on Appeal

Mother argues on appeal that the trial court erred in failing to find Father in criminal contempt for violating Count Five of her amended petition for contempt. It is not necessary to review the allegations Mother set forth in Count Five, however, because the doctrine of double jeopardy precludes us from providing the relief Mother seeks. As Father points out,

> If a defendant is charged with criminal contempt, guilt must be established by proof beyond a reasonable doubt. Criminal contempt cases are subject to the double jeopardy provisions in the federal and state constitutions. Thus, an appeal from an acquittal of criminal contempt is barred.

*Overnite Transp. Co. v. Teamsters Local Union No. 480*, 172 S.W.3d 507, 510 (Tenn. 2005) (internal citations omitted); *accord Taylor v. Taylor*, E2013-01734-COA-R3-CV, 2014 WL 3763727, at \*11 (Tenn. Ct. App. July 30, 2014).

Mother also seeks an award of attorney's fees on appeal on the grounds that she is the prevailing party on appeal. Mother relies on Tenn. Code Ann. § 36-5-103(c) in support of her request. This statute grants courts the discretion to award prevailing spouses their attorney's fees in cases involving custody, alimony, and/or child support. Not only does this appeal not involve any of these issues, Mother was not the prevailing party on all issues. Accordingly, we deny Mother's request for an award of fees.

### III. CONCLUSION

We affirm the trial court's judgment in all respects. Costs of this appeal shall be split equally between the parties, and execution shall issue if necessary.

_____
ANDY D. BENNETT, JUDGE

12