IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 9, 2019 Session

## MICHAEL P. ABRAHAM v. CAROLYNN ABRAHAM

**Appeal from the Chancery Court for Rutherford County**
**No. 10CV-1716    Howard W. Wilson, Chancellor**

_____

### No. M2019-00381-COA-R3-CV
_____

This is an appeal of the post-divorce modification of a parenting plan. Father ceased making regular contributions into an account for the children's education that was established in the original parenting plan agreed upon in 2004, but was not included in a modified plan adopted by agreement seven years later. Mother sought to recover the contributions that were not made by Father after 2011 in addition to the amount Father withdrew from the college fund account without her consent. Mother also sought reimbursement for the cost of a vehicle she purchased for one of the children and for an upward adjustment to Father's child support obligation to pay for extracurricular expenses. The court held that Father was not obligated to contribute to the college fund after 2011, but ordered Father to reimburse the fund for the amount he withdrew; the court denied Mother's request for reimbursement of the cost of the vehicle and for an upward adjustment of child support, and granted Mother a money judgment for expenses incurred when the children moved out of Father's home to reside with her. Mother appeals. Upon a thorough review of the record, we discern no error and affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Carolynn Elaine Clements, Smyrna, Tennessee, *Pro Se*.

Sandra L. M. Smith, Murfreesboro, Tennessee, for the appellee, Michael P. Abraham.

### OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

Michael P. Abraham ("Father") and Carolynn E. Abraham ("Mother") were divorced in February of 2004; two children were born of the marriage, in January of 2001 and September of 2002. The Final Decree incorporated an Agreed Parenting Plan Order (the "2004 Plan") and a Marital Dissolution Agreement. At issue in this appeal is the following provision in the Child Support portion of the parenting plan:

> In addition [to child support of $1,100 per month Father was to pay], Father will pay [Mother] 32% of the net company bonuses he receives each year into the college investment accounts maintained for the children at Putnam Investments, if he is paid a bonus and provide[s] Mother with proof of the amount of the bonus.

A related provision in the Marital Dissolution Agreement states that:

> The custodial accounts for the minor children shall only be used for their post-high school education unless the parties agree in writing otherwise. The Father shall receive an annual statement of each account from the Mother.

On January 5, 2011, Father filed a petition to modify the 2004 Plan; this petition was resolved through mediation and memorialized in an Agreed Order entered July 20, 2011; the order incorporated a new parenting plan (the "2011 Plan") that did not include the provision in the 2004 Plan quoted above.

On January 28, 2015, Father filed a petition to modify the 2011 Plan, requesting that the trial court review both parties' income and make a new determination regarding child support obligations; following receipt of information on Mother's 2014 income, Father filed a separate motion that child support be recalculated. On August 17 the court entered an Agreed Order adjusting child support; pertinent to the issues in this appeal, the order stated:

1. Th[at] effective June 1, 2015, neither party shall pay child support to the other. Attached as Exhibit A is a child support worksheet indicating that Father should pay to Mother the sum of $112.00 per month. The parties agree that a deviation is appropriate given the small amount and the agreements of the parties to pay significant other expenses of the children to include college fund, lunch expenses, and cell phones.
2. The parties agree that the previous parenting plan entered into by this court should not be modified.

* * *

4. That to offset any claims of Father for retroactive decrease in child support, Mother will contribute $750.00 to each of the children's college

- 2 -

funds upon execution of this agreement. Mother shall further contribute a minimum of $250.00 to each child's college fund on a quarterly basis beginning September 1, 2015, however, if Mother is required to pay one half of the medical insurance of the children as set forth herein, Mother's contribution will be reduced to $100.00 per child per quarter.

On August 22, 2017, Mother filed a Petition for Modification, asserting there was a substantial and material change in circumstances such that "based upon the ages, activities, and feelings of the children, [the] Parenting Schedule is not in the children's best interest." The petition was amended on October 16 to add factual allegations and a claim to recover expenses that Mother had expended or incurred on behalf of the children which had not been reimbursed by Father; an Answer and Counter Petition for modification and contempt was filed in response. Following the filing of additional motions and responses addressing, *inter alia*, parenting time, support, and contempt, the case proceeded to a hearing on November 7, 2018. Following the trial, the court took the matter under advisement and rendered its ruling on November 15; the ruling was incorporated into an order entered December 18.

In the order the court identified the following matters for resolution: (1) Mother's claim that Father was obligated to contribute $9,000 from bonuses he received to the college fund which was established in the 2004 Plan and to reimburse the account for $20,000 he withdrew without permission; (2) Mother's claim to recover the value of a truck that Father took from his son and the cost of a replacement vehicle Mother purchased for him, and for other expenses; (3) modification of child support; and (4) the parties' competing claims for attorneys' fees.[1] With respect to the college fund, the court held that Father's obligation to contribute expired when the 2011 Plan was approved by the court, so Father was not responsible for the $9,000 Mother sought. In addition, the court held that Father's unilateral withdrawal of $20,000 from the account violated the MDA and ordered that he reimburse the fund $16,770.23.

As to the truck and replacement vehicle, the court determined that the evidence showed that the son's possession of the truck was "a conditional bailment of sorts" and did not support Mother's contention on behalf of the son, based on promissory estoppel, that the son was entitled to the truck and, on the same evidence and legal theory, that Mother was not entitled to judgment for the cost of the replacement vehicle she purchased. The court awarded Mother $3,600 for the cost of necessities for the children when they moved out of Father's home to reside with her fulltime. The court entered a new support order based on the parties' then current income and the fact that the children resided with Mother and had no residential parenting time with Father; the court denied Mother's request for upward deviations to include $950 for extracurricular expenses and

---

[1] Both parties were represented by counsel at trial; Mother represents herself on appeal.

granted her request to be awarded the income tax deduction for the oldest child for 2018 and beyond.[2]  Finally, the court declined to find either party in contempt or to make an award of counsel fees.

On December 12, after the court rendered its oral ruling but before the order was entered, Mother, now proceeding pro se, filed a document styled "Motion to Request Evidentiary Hearing Due to Fraud Under Rule 60.02", in which she set forth 32 statements of what she asserted was fraud perpetrated by Father in the evidence presented at trial and other errors which she argued justified a hearing and relief.  A hearing on the motion, which the court treated as being timely filed as a Rule 59 motion to alter or amend the December 18 order, was held on January 15, 2019; the court entered an order denying the motion on February 8.  Mother filed a timely notice of appeal.

Mother argues that the court abused its discretion in its rulings as to the college fund and in failing to award an upward deviation to Father's child support obligation; she also contends that the court erred by not making findings of fact and conclusions of law in accordance with Tennessee Rule of Civil Procedure 52 in its ruling on her motion, and in failing to award her attorneys' fees.  Father contends that the court abused its discretion in failing to award counsel fees and that he is entitled to fees and costs for defending a frivolous appeal.

## II. STANDARD OF REVIEW

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  The trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness.  *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).  Some of the issues raised on appeal implicate the abuse of discretion standard.  In *Lee Medical, Inc. v. Beecher*, 312 S.W.3d 515 (Tenn. 2010), the Supreme Court discussed the abuse of discretion standard, stating:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal.  *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000).  It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives.  *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999).  Thus, it does not permit reviewing courts to second-guess the

---

[2] Mother had received the deduction for the youngest child in the 2004 Plan.

court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). . . .

Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d [22] at 42 [(Tenn. 2005)].

*Id.* at 524-25.

## III. ANALYSIS

### A. College Fund

#### i. Father's Obligation to Contribute to the College Fund

With respect to Father's contributions into the college fund, the court held:

The court finds plainly that the 2004 permanent parenting plan is a contract regarding the college accounts, and obligated the father to pay 32 percent of his net bonuses into the college accounts maintained for the children. However, in 2011, by entry of the second parenting plan, the parties agreed to discontinue this requirement. Page one of the 2011 parenting plan provides: This plan modifies an existing parenting plan dated February 4th, 2004.

While the parties could have chosen to include a college fund provision as they did in the 2004 plan, they did not. The 2011 plan is unambiguous and does not incorporate or reference the 2004 plan, thus the court finds that the 2011 plan superseded and vacated the prior 2004 plan,

- 5 -

thus the father was only obligated to pay 32 percent of his net bonuses from 2004 until July of 2011.

Mother contends that the court erred in holding that Father's obligation ended in 2011.

As noted by the trial court, the 2011 Plan states that it "modifies an existing parenting plan dated February 4, 2004"; the wording in the 2004 Plan relative to the college fund, quoted earlier in this opinion, is not contained in the 2011 Plan. We agree with the court that the 2011 Plan supplanted the 2004 Plan, and eliminated Father's obligation. We also note in this regard that the Agreed Order adjusting child support which was entered on August 17, 2015, required Mother to make contributions into the account but was silent as to Father; this is further evidence that supports the determination that Father's obligation ended when the 2011 parenting plan was entered. The holding is supported by the evidence and is not illogical or unreasonable; the court did not err in so holding.

### ii. Calculation of Father's Contribution to and Reimbursement to the Fund

In a deposition given prior to the hearing, Father acknowledged that he withdrew $20,000 from the college account without Mother's permission; Mother sought recovery of this amount. In its ruling, the court determined that the withdrawal was a breach of the MDA as well as Father's obligations under the 2004 Plan, and that the Mother should be awarded a judgment of $16,770.23 against Father, for the benefit of the children. Mother contends that the court erroneously credited Father with a $1,000 contribution she made in February of 2016.

The court explained its computation in its ruling:

As the college fund falls under the child support - also falls under the child support section of the plan, the court looks to the Tennessee Child Support Guidelines for guidance. The Tennessee Child Support Guidelines require that bonuses be included into determinations of gross income for child support purposes. The guidelines further permit that variable incomes such as bonuses, overtime, paid dividends, et cetera, may be averaged over a reasonable time and added to the parent's fixed salary or wages to determine gross income. While the guidelines do not specify what categories of compensation constitute a bonus, it does evidence an intent to give additional compensation - that any additional compensation may be added to the base for determination of gross income.

Mother's counsel has cited Black's Law Dictionary for the suggestion that a bonus is a sum paid for services, and upon some consideration, but in addition to or in excess of that which would ordinarily

be given. The court agrees with this interpretation and largely adopts mother's figures of what father's bonuses were.

The court finds that father's management incentive bonus, his KPI bonus, his stock option plans and contract bonuses are all bonuses for purposes of the parties' 2004 parenting plan MDA.

* * *

I've actually done a spreadsheet to indicate the gross bonuses that I'm including when I'm determining the bonuses that we're including, and generally they're all the bonuses from 2004 through 2011. And we have a gross amount, and what I've done is I've resolved that and taken out the tax liability and come up with the net bonus, and then I've taken that net bonus and multiplied it by the 32 percent contribution that father is required to make. And I'll hand out a copy to counsel so they can see that. And as counsel can see, it looks like that I have figured that the total contributions that father should have made during this timeframe as I found that the orders require would be twenty-thousand six-hundred and twenty-three cents.

I've also reviewed exhibits that have been made of record regarding father's contributions and determined that father's actual contributions pre-2012 totaled – let's see - $17,830, which left a deficit of $2770.23. However, father made some voluntary contributions to the account in the amount of $6000 in 2012, 2013 and 2016, which again leaves him with an overpayment on his obligation, since those payments were voluntary, of $3229.77.[3]

Mother argues that "[o]ne of the most egregious errors . . . is the Trial Court used either her number on Exhibit 7, or Father's numbers on Exhibit 17, to create the Trial Court's spreadsheet. . . Father had other income payments which perhaps could or should have been included or, at minimum, considered." Mother's argument in this regard is without merit. The $20,600.23 figure is derived from Exhibit 2, which is the payroll record from Father's employers for the period 1997 – 2014; upon our review of the exhibit, the amount is an accurate calculation of 32 percent of the gross amount of bonuses, net of taxes withheld, over that period.[4]

Exhibit 6, the spreadsheet prepared by Mother that shows the contributions both

---

[3] The spreadsheet prepared by the court was attached as Exhibit B to the December 18 order.

[4] We have not been cited to an exhibit by which to verify the amount of taxes withheld.

parents made into the fund, shows that Father's total contribution through 2011 was $17,830; this is the figure used by the court in its calculation and in determining that Father's actual contributions were short $2,770.23 of what they should have been. Exhibit 6 also showed that Father contributed $2,000 to the fund in 2012, 2013, and 2016, totaling $6,000; the figures support the finding that, after deducting the $2,770.23, Father had overpaid his obligation by $3,229.77. The court deducted the overpayment from the $20,000 that he withdrew from the college fund, and ordered Father to reimburse the balance of $16,770.23 into the fund. Mother's contention regarding the 2016 contribution she made being erroneously credited to Father is not supported by the evidence.

In her brief on appeal, Mother argues that the evidence of the court's error is contained in Exhibit 4, a series of text messages between Mother and Father regarding the college fund and the son's truck; the exhibit includes a text message from Mother, timestamped February 2, 2016, that shows a picture of a check for $1,000 from her to Father. In her testimony regarding the exhibit, she states that she gave the check to him for him to deposit into the fund. This testimony is consistent with the February 29, 2016 entry on Exhibit 6 that Mother contributed $1,000 and the line entry that "Father matched Mothers 1K". While Exhibit 4 is evidence that Mother contributed $1,000 on February 6, 2016, the check and Mother's testimony does not conflict with the entry on Exhibit 6.

We review the court's calculation of the amount of Father's reimbursement under the standard of review at Tennessee Rule of Appellate Procedure 13(d); the evidence does not preponderate against the determination of the amount of Father's reimbursement to the fund, and the court did not abuse its discretion in ordering that it be reimbursed.

**B. Child Support**

On March 9, 2018, the court entered an agreed order "temporarily calculat[ing]" Father's support at $1,282.00 per month, based on Mother's income of $4,333.33 per month, Father's income of $7,916.67, and Father having no parenting with the children. In its oral ruling that was incorporated into the December 18 order, the court held that the proof corroborated the income specified in the worksheet and adopted the worksheet and child support obligation, making it the permanent order. The court denied Mother's request for an upward deviation of $950.00 for extracurricular activities for the children, stating:

> The child support guidelines provide that a presumptive child support order under the child support worksheet is rebuttable and may be deviated upwards to include special expenses for child rearing. However, this decision to deviate is discretionary based on applicable law and relevant facts.

The mother contends that the children have roughly [$]1500 in monthly expenses for extra-curricular activities, including counseling, health care, church camp, choir, college prep expenses. The court expressly notes and finds that there was no proof of these expenses introduced at trial.

Further, the father presently carries and maintains health insurance on the children at his cost.

While Mother asserts that the court abused its discretion when it denied her request for an upward deviation, she has not cited to evidence to support the argument. We have reviewed the record and have not found any proof of the children's extracurricular activities and corresponding expenses. The court applied the correct legal standard when it followed the Child Support Guidelines and set Father's support obligation, and it appropriately declined to grant an upward deviation when Mother did not provide proof of the expenses.

## C. Findings of Fact and Conclusions of Law

Mother asserts that the court erred when it failed to make sufficient findings of fact and conclusions of law; while she does not provide further argument, she asks this court to "please read the Order and advise if it meets the legal standard. Mother's limited understanding is that a court speaks through written orders."

Tennessee Rule of Civil Procedure 52.01 requires trial courts in non-jury cases to "find the facts specially and . . . state separately its conclusions of law." "While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" *In re Estate of Oakley*, No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *10 (Tenn. Ct. App. Feb. 10, 2015) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)).

Upon our review of the court's December order and the transcript of its oral ruling, which was incorporated into the order, we conclude that the court fully explained the factual basis for its decisions as well as the legal standard that guided the assessment of the evidence provided. The court made factual findings from the bench and incorporated those findings into its ruling. In ruling on when Father's obligation to contribute to the college fund ended, the court explained that it would make its determination based on "generally applicable contract law" and proceeded to review the language of the 2011 parenting plan as evidence of the parties' intent. With respect to the calculation of Father's contribution, the court noted that it "had reviewed exhibits that have been made of record regarding Father's contributions," and proceeded to create a spreadsheet of the figures used in the calculation. Regarding the dispute over the truck,

the court discussed the arguments presented and explained the applicable law and held that "the court [was] not convinced and the mother has not proven by a preponderance of the evidence that there was an enforceable contract between either [the child] and the father as to the truck." In all respects, the court provided sufficient factual findings and legal analysis to demonstrate the manner by which it reached its conclusions. Mother's assertions to the contrary are without merit.

**D. Rule 60 Hearing**

Mother alleges that the court erred in denying her "Motion to Request Evidentiary Hearing Due to Fraud Under Rule 60.02", in which she moved the court "to investigate the fraud perpetrated against Mother, Children, and the court." In the motion, Mother alleges that "Father's attorney blatantly misrepresented [her] position and relevant facts before this court with false statements in [the] May and July 2018 hearings" and addresses those instances that she believes demonstrated that "Father failed to disclose all earnings and income at the Temporary Child Support Hearing on March 5, 2018."

The court entered an order on February 8, 2019, and held that "considering Mother's motion filed as pursuant to Rule 60…[and] Rule 59, it is premature" because the "order in this matter was entered on December 18, 2018…and Mother's motion was filed on December 12." Thus, the court considered the motion as a Rule 59 motion to alter or amend the judgment. The court found that "Mother [was] requesting to relitigate matters that have already been adjudicated" and denied the motion.

Motions pursuant to Tennessee Rule of Civil Procedure 59.04 may be granted (1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for *sui generis* reasons, a judgment should be amended to correct a clear error of law or to prevent injustice. They should not, however, be granted if they are simply seeking to relitigate matters that have already been adjudicated. *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998).

In the November ruling, the court resolved the issues regarding the income that was to be included in the determination of child support, which consisted of bonuses and other income, and the issue of whether Father's obligation to the college fund continued after the entry of the 2011 parenting plan. The statements set forth in Mother's motion are related to the issues that had previously been litigated, and Mother did not identify any evidence that was not available at time of trial, cite to a change in controlling law, or show that the court committed a clear error of law. Thus, the court correctly held that Mother's motion was an attempt by Mother to relitigate matters that had been resolved at trial and did not err in its ruling on this motion.

**E. Attorney's Fees**

Citing to the provision of the MDA stating that "[i]n the event either party has to petition the Court for enforcement of any of the provisions in this Agreement, then the party at fault shall be responsible for reasonable attorney fees, expenses and Court costs in the enforcement of the same," Mother and Father argue that the trial court erred in denying each their attorney's fees.

The court stated in its ruling that "it appears to the court that…both parties have prevailed in some portion of their claim against the other. It also appears that both parties…[make] sufficient incomes…to pay their own attorney's fees." Neither party cites to evidence that is contrary to the holding or argues that the court applied an incorrect legal standard. As the court noted, each party prevailed on a portion of their claims, and the record supports the finding that each had sufficient income to pay their counsel. The decision to award fees in a case such as this is a discretionary one, *see* Tennessee Code Annotated section 36-5-103(c) and, upon our review of the record, we do not conclude that the court abused its discretion in not awarding fees to either party.[5]

Father also asserts that Mother's appeal is frivolous and he should be awarded damages pursuant to Tennessee Code Annotated section 27-1-122. This court is authorized to award just damages against the appellant if it determines the appeal is frivolous or that it was taken solely for delay. Tenn. Code Ann. section 27-1-122. The statute, however, is to be interpreted and applied strictly to avoid discouraging legitimate appeals. *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2004); *see Davis v. Gulf Ins. Group*, 546 S.W.2d 583, 586 (Tenn. 1977) (discussing the predecessor of Tenn. Code Ann. § 27-1-122). A frivolous appeal is one that is devoid of merit or has no reasonable chance of success. *Wakefield*, 54 S.W.3d at 304. We find that Mother's appeal is not frivolous and decline to award Father his fees on appeal.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in all respects.

_____

RICHARD H. DINKINS, JUDGE

---

[5] Mother also articulates the following issue: "Will the Court of Appeals award Mother costs for transcripts, court costs, and other reasonable fees totaling $7,220 to date for this appeal…?" This request is properly addressed to the trial court. *See* Tennessee Rule of Civil Procedure 54.04.